**MASSACHUSETTS BONDING & INS. CO.**
**v. DARBY.**

No. 1872.

District Court, W. D. Missouri, W. D.

Feb. 14, 1945.

McClintock & Quant, of Kansas City, Mo., for plaintiff.

James P. Aylward and Roy W. Rucker, both of Kansas City, Mo., for defendant.

COLLET, District Judge.

Plaintiff signed the defendant's bond given to the City of Kansas City, Missouri, guaranteeing the faithful performance of defendant's duties as Director of Finance for the City. The City made claim against plaintiff as surety on the bond which was compromised and settled for $44,444.44, which sum plaintiff paid the City on November 7, 1940. By this action, instituted July 8, 1944, plaintiff seeks to recover back from the defendant the amount it paid. The basis for the present action is an agreement in the nature of an indemnity contained in defendant's application to plaintiff for the bond. The application was attached to the petition. That part of it now under consideration is as follows:

"I certify that the answers given to the foregoing interrogatories are true and in consideration of the Massachusetts Bonding and Insurance Company executing the bond herein applied for, I do hereby covenant, promise, and agree to pay the premium of $— per annum in advance during the continuance of the bond, and to indemnify and keep indemnified, the said Company from, and against any and all loss, costs, charges, suits, damages, counsel fees, and expenses of whatever kind or nature (including such costs and expenses, if any, which may be incurred by said Company in case it shall institute legal proceedings to be relieved from further liability on said bond) which said Company shall or may, for any cause, at any time, sustain, or incur, or be put to, for or by reason or in consequence of said Company having entered into or executed said bond."

The cause is now pending on motion to dismiss for want of sufficient allegation to justify a judgment against defendant. The petition must therefore be analyzed.

It alleges the organization of Kansas City, Missouri, under a Charter and states that the Charter provides for the appointment of a City Manager by the City Council who shall be the chief administrative officer of the City, that the City Manager is authorized to appoint a Director of Finance—"who shall have charge of the Department of Finance and the administration of the financial affairs of the City, including the installation, keeping and supervising of all accounts and financial records of the City; the supervision of the collection, custody and disbursement of all city moneys, except collections by the Water Department, and further provides that such Director of Finance shall have control over the expenditures of the City". (Quoted from the petition.)

It is alleged that H. F. McElroy was duly appointed City Manager on April 10, 1926, and served as such until his resignation on April 12, 1939. That Mr. McElroy duly appointed defendant Director of Finance on July 16, 1930, in which capacity he served until his resignation on April 17, 1940, during which period he—"was in charge of such Department of Finance and of the administration of the financial affairs of the City as in such Charter provided."

The petition then alleges that the Charter required the giving of a surety bond by defendant—"for the faithful performance of his duties as such officer * * *", that defendant gave such bond in the amount of $150,000 with plaintiff as surety to the extent of $75,000.00, that by the terms of the bond it was to be void on the condition—"that defendant should faithfully discharge and perform all his duties as such Director of Finance from and after February 1, 1933, but that otherwise it should remain in full force and effect". A copy of the bond was attached to the petition.

It is further alleged that in order to procure plaintiff to execute the bond defendant executed the written application heretofore referred to by which defendant agreed to indemnify plaintiff from any and all loss which plaintiff might suffer in consequence of its execution of the bond.

It is then alleged that defendant as Director of Finance, after November 7, 1937—"failed to perform and discharge his duties as such Director of Finance, and breached the terms and conditions of his official bond *in that*, from time to time, as hereinafter set forth, he wrongfully, suffered, permitted

and caused divers sums of moneys, as hereinafter set forth, of the public moneys, funds and property of the city, to be wrongfully withdrawn from the treasury of the city, and to be wrongfully paid to H. F. McElroy and by H. F. McElroy appropriated and converted to his own use and benefit, * * * all of which was done by and as the direct result of wrongful acts and official misconduct by and on the part of defendant as Director of Finance of the City, *in that* he wrongfully drew, executed and issued to and in favor of H. F. McElroy, under the name adopted by him [McElroy] and defendant of 'City Manager's Emergency Fund' * * *", certain Treasury Warrants which were listed and which totaled $695,748.43. It is then alleged that the moneys withdrawn from the City Treasury on these warrants were not used for any of the purposes for which the funds were created, with the result that such money "became permanently lost to each of said funds" and that the City was not indebted to the City Manager's Emergency Fund, had no such account, and no such account was authorized by Charter or Ordinance.

It is further alleged that after the funds were placed in the City Manager's Emergency Fund—"such funds were with the knowledge, consent, and assistance of defendant converted and appropriated by H. F. McElroy to his own use and benefit * * *".

The petition charges that the naming of the City Manager's Emergency Fund as the payee in the warrants—"was a means, scheme, device and subterfuge adopted, used, and employed by H. F. McElroy, with the knowledge, consent and assistance of defendant, for the express purpose of wrongfully withdrawing and paying over to H. F. McElroy said public money * * * and thereby converting same to his own use and benefit."

The allegation relating to plaintiff's loss on the bond is:

"That as the direct result of the foregoing failure of Defendant to faithfully perform and discharge his duties as such Director of Finance, the City lost money and was damaged in a sum largely in excess of $200,000.00 and the City presented claim thereon against Plaintiff, as surety upon such official bond of Defendant, which loss and damage as against this Plaintiff was by Plaintiff and the City compromised and settled for $44,444.44, which amount Plaintiff was required to and did pay to the City November 7, 1940, as surety on such bond. April 13, 1943, Plaintiff demanded payment of such sum from Defendant and Defendant refused and still refuses to pay the same."

In addition to the general assignment that the petition fails to state a claim upon which relief can be granted, the motion to dismiss is based upon the contentions that (1) the allegations of the petition constitute legal conclusions and tender no issue of fact, (2) that under the Charter and the applicable Missouri statutes title to the warrants could only be assigned in the manner provided by statute, that no title passed by the endorsement alleged, with the result that none of the funds represented by those warrants were legally paid out of the city funds and should be treated as still remaining there, (3) that the Finance Director's only participation with the issuance and payment of the warrants was to certify that there was an unencumbered balance to the credit of the appropriation to which the several warrants were chargeable and a cash balance to the credit of the fund from which payment was to be made sufficient to meet the warrant and that for those reasons defendant Finance Director should not be held liable for the payment of the warrants, (4) that the City for many years had known of the existence of the City Manager's Emergency Fund and the method followed by its officers of certifying, drawing, and paying warrants, had been a party to those methods and approved them and could not have recovered from plaintiff for that reason, (5) that the petition shows the payments made by plaintiff to the City were voluntary payments, i. e. that there was no valid or legal claim upon which the payments were made, and (6) that none of the warrants were attached to the petition. These contentions will be referred to in the order stated.

(1) It is frequently difficult to sharply distinguish between allegations constituting conclusions of law and conclusions of fact or the "ultimate" fact. Oftentimes conclusions of law are so intermingled with allegations of fact that they may not be readily separated and properly labeled. But on motion to dismiss for failure to state a cause of action all fair intendments of the allegations of the petition are indulged, and if therefrom facts

which will authorize relief may be gleaned, the cause should not be summarily dismissed.

■ Considered in its entirety and reduced to a single sentence the petition asserts that it was the official duty of defendant to supervise the collection, custody and disbursement of all City moneys and that defendant and McElroy adopted the name City Manager's Emergency Fund as a means or method by which McElroy with the knowledge, consent and assistance of defendant, converted and appropriated those funds to his, McElroy's, own use and benefit. Proof of those ultimate facts with the reasonable implications flowing therefrom would constitute a breach of defendant's official duties and the alleged obligations of the bond. Whether those facts can be established is, of course, another question.

The second specific ground for defendant's motion[1] is in general effect a denial that the doing of those things charged, constituted a violation of the defendant's official duty and responsibilities to the City. Stated differently, the contention is that because of the requirements of the law affecting the transfer of title to the warrants, the title thereto could not be passed by the acts charged to have been done, defendant could not by his alleged participation in the commission of those acts, have "assisted" in the conversion of the funds of the City in violation of his official duties. This contention assails and denies the accuracy of the conclusion that the City was actually deprived of its funds by the transactions alleged.

■ Why is that question material to this controversy? The present action is based upon the quoted indemnity clause in defendant's application to plaintiff for the bond which purportedly guarantees the repayment to plaintiff of money paid by plaintiff—"for or by reason or in consequence of said Company having entered into or executed said bond." Thus the present parties have changed their relative positions for plaintiff was formerly surety for defendant on his bond to the City and now defendant is in the position of a surety or guarantor to plaintiff by reason of the indemnity agreement sued on. Under

those circumstances the indemnity agreement will be strictly construed in favor of defendant, Missouri, K. & T. R. Co. v. American Surety Co., 291 Mo. 92, 236 S.W. 657, and defendant will not be liable to plaintiff for voluntary payments made by the latter to the City in the compromise settlement between plaintiff and the City, to which defendant was apparently not a party. And that payment was voluntary or not dependent on whether there was a legal responsibility for the payment. The question of whether the City actually suffered a loss by reason of the alleged transactions becomes material therefore in determining whether plaintiff's compromise settlement was a voluntary payment.

■ Actual loss of the funds by the City is alleged categorically. Frequently the statement appears that the City's funds were converted and appropriated by H. F. McElroy "to his own use and benefit". At page 5½ of the petition it is asserted that the money drawn from the various Departmental Funds and deposited in the City Manager's Emergency Fund were not used for the purposes for which those funds were created and "became permanently lost to each of said funds". In paragraph (m) of the petition it is alleged that "the City lost money and was damaged in a sum largely in excess of $200,000.00 * * *". While these allegations may be somewhat equivocal on the question of whether the City actually lost the money which was deposited in the City Manager's fund they are sufficient on motion to dismiss to assert official misconduct on the part of defendant in the transfer of the funds to the City Manager's Emergency Fund.

■ If the act which constitutes a breach of the conditions of the bond (in this case transfer of the funds to the City Manager's Emergency Fund) results in a loss to the insured, the fiction that money illegally paid out will be treated as remaining where it was will not be applied although the insured may, because of the illegality of the withdrawal, have an unexercised right to recover from one other than the bondsmen. National Surety Co. v. State Savings Bank, 8 Cir., 156 F. 21, 23, 14 L.R.A.,N.S., 155, 13 Ann.Cas. 421. The allegation that the transfer of the

---

[1] "That under the Charter and the applicable Missouri statutes title to the warrants could only be assigned in the manner provided by statute, that no title passed by the endorsement alleged, with the result that none of the funds represented by those warrants were legally paid out of the City funds and should be treated as still remaining there."

money to the City Manager's Emergency Fund resulted in the appropriation of those funds *to McElroy's own use* necessarily implies that they were thereby lost to the City and sufficiently charges such loss was the direct result of the transfer. One of defendant's contentions is in effect that the transfer to the fund referred to did not cause a loss to the City and that defendant's official connection with the transaction alleged ended with the initial transfer of the money, that the money was thereafter not actually lost to the City by being converted to a use which could not be a legal one under the law (as was the case in Maryland Casualty Co. v. Kansas City, Mo., 8 Cir., 128 F.2d 998) or, if lost to the City that the loss was not the reasonable, natural, or proximate result of any act of commission or omission of defendant. See National Surety Co. v. State Savings Bank, 8 Cir., 156 F. 21, 23, 14 L.R.A.,N.S., 155, 13 Ann. Cas. 421. But obviously those contentions involve disputed issues of fact which may not be determined now.

The third specific assignment[2] consists of a statement of defendant's official duties contradictory to the Charter and Ordinance provisions. See Art. IV, Secs. 77, 93 of City Charter.

The fourth assignment[3] relates to matters of defense not appearing in the petition. Whether such a defense will be interposed remains to be seen. The same applies to defendant's assertion in his brief that plaintiff should be denied recovery because of its knowledge of the practices followed and made no objection. The Statute of Limitations is also an affirmative defense to be specially pleaded. See Federal Rules of Civil Procedure, rule 8 (b), 28 U.S.C.A. following section 723c.

The fifth assignment that plaintiff's payments were voluntary because there was no valid legal claim to support the payment has been discussed in connection with the question of whether the City actually lost its money.

 The ground for the contention that the warrants should have been attached to the petition is not apparent. The warrants were not sued on and there is no reason other than that suggested for attaching them to the petition.

For the reasons stated the motion to dismiss is overruled.

---

[2] "(3) That the Finance Director's only participation with the issuance and payment of the warrants was to certify that there was an unencumbered balance to the credit of the appropriation to which the several warrants were chargeable and a cash balance to the credit of the fund from which payment was to be made sufficient to meet the warrant and that for those reasons defendant Finance Director should not be held liable for the payment of the warrants."

[3] "(4) That the City for many years had known of the existence of the City Manager's Emergency Fund and the method followed by its officers of certifying, drawing, and paying warrants, had been a party to those methods and approved them and could not have recovered from plaintiff for that reason."