PINKERTON BROS. CO. *v.* BROMLEY.

1. FRAUDULENT PURCHASE—EVIDENCE—QUESTION FOR JURY.
    The question of fraud in the purchase of goods should be submitted to the jury, where the evidence tends to show that one employed by a corporation as bookkeeper embezzled funds with which he established credit with the seller for a store managed by a partner, and, after overstocking it, sold the goods for half their value, and absconded.

2. SAME—NOTICE.
    It was error to refuse to submit to the jury the question whether defendant was a *bona fide* purchaser of a stock of

goods a part of which was fraudulently obtained from plaintiff, a wholesale dealer, where it appeared from the testimony that defendant bought the stock for 50 cents on the dollar, under circumstances that aroused his suspicions, and that, while he waited a short time before closing the deal, he took no steps towards ascertaining whether plaintiff had a claim against the goods, notwithstanding he was aware that plaintiff had supplied nearly the entire stock.

Error to Wayne; Donovan, J.   Submitted October 21, 1898.   Decided December 13, 1898.

Replevin by the Pinkerton Bros. Company against Joseph H. Bromley.   From a judgment for defendant on verdict directed by the court, plaintiff brings error.   Reversed.

*John Miner*, for appellant.

*William B. Jackson*, for appellee.

HOOKER, J.   The plaintiff was engaged in the wholesale grocery business in Ohio, and had dealings with the Cambridge Fuel Company through Bothwell, its bookkeeper.   Bothwell made an arrangement with one Axford to go into the retail grocery business as copartners, Bothwell to furnish the money and Axford to attend to the business, profits to be divided equally.   Bothwell stocked the store heavily, through successive purchases of goods, mostly from the plaintiff, with whom he succeeded in establishing a credit for the firm by means of considerable payments from time to time.   These payments were made by diverting from their proper use drafts bought with the funds of the Cambridge Fuel Company for use in its business.   Finally Axford became suspicious, and quit the business, and, prior to the arrival of the plaintiff's agent at Detroit, Bothwell absconded.   Plaintiff's agent found the goods in the possession of defendant, from whom they were replevied, after futile efforts to adjust the matter and an offer to reimburse him for money paid for

the stock.    Defendant made the claim to the plaintiff that he had purchased the goods, and had paid 50 cents upon the dollar, as per an alleged inventory which he said was taken.    No testimony was offered upon behalf of the defendant, and the learned circuit judge directed a verdict for the defendant.    The brief of counsel for the appellee concedes that, "if the plaintiff had shown any fraud on the part of Bothwell in obtaining the goods, the defendant would have had, under the law, to prove the *bona fides* of his purchase," and proceeds to argue that fraud in the purchase of the goods was not shown.

We are of the opinion that there was evidence from which the jury might have inferred fraud, as the testimony indicated that Bothwell deliberately planned to establish a fictitious reputation for his firm, by applying embezzled funds in part payment for purchases.    The large quantity of goods purchased was disproportionate to the business of the concern, and the disposition of the property for a price much below its value, followed by the absconding of Bothwell, are significant facts, and leave little doubt that the scheme was a fraudulent one from its inception.

Whether the burden of showing his *bona fides* was upon the defendant we need not inquire, as the testimony shows that he admitted that he had suspicions regarding the proposed sale of the stock, and waited to see if any one would assert rights against the goods; and, although he knew that the goods were nearly all bought from the plaintiff, and thought it strange, he took no steps to ascertain whether it had a claim upon them, but, after waiting for a time, concluded to take his chances and close the deal.    He did not take the witness stand himself, or offer any proof as to the *bona fides* of his purchase or the payment for the goods.    This testimony was sufficient to raise a question for the jury.

"To constitute good faith, there must be an absence, not alone of participation in the fraud or collusion with the vendee, but also of knowledge or even notice of the

fraud, or of facts and circumstances calculated to put an ordinarily prudent business man on inquiry, so that he would ascertain the truth." 8 Am. & Eng. Enc. Law, 841, and cases cited.

In this case the defendant admitted, not only that there were facts calculated to make a man suspicious, but that they actually raised his suspicions; yet he took no means to ascertain whether they were well founded, and allowed his suspicions to be allayed by the fact that Bothwell was working for a reputable house.

The case should have gone to the jury upon both questions.

The judgment is reversed, and a new trial ordered.

The other Justices concurred.