MASSACHUSETTS BONDING & INSURANCE COMPANY *vs.* JOHN GAUTIERI *et al.*

MARCH 10, 1943

PRESENT: Flynn, C. J., Moss, Capotosto & Condon, J.J.

CONDON, J. This is an action of covenant which was later amended on motion of the plaintiff to assumpsit. The declaration is in two counts. The first count is on the breach of a bond of indemnity, signed, sealed and delivered by the defendants to the plaintiff, and the second is on the common counts. The action was tried in the superior court to a jury but at the conclusion of the evidence the trial justice directed a verdict for the plaintiff on its motion. Defendants excepted to this ruling and the case is here on such exception and also on several other exceptions to the rulings of the trial justice excluding certain evidence.

Defendants contracted to indemnify plaintiff under certain conditions set out in such bond of indemnity in consideration of the plaintiff becoming surety for the Ideal Perfume Manufacturing Company, Inc. to the United States on a certain bond of such company as a manufacturer using specially denatured alcohol. On May 2, 1931, plaintiff became such surety on a bond in the sum of $4000. Later, on April 12, 1934, effective as of March 27, 1934, it became

surety on a similar bond in the sum of $6000 and continued thereon as such surety until the principal went out of business at the end of the year 1934.

The United States as the obligee of such bonds never claimed any breach thereof by the principal until August 30, 1938. By letter of that date, addressed to the principal and the surety, it claimed that the principal had illegally diverted alcohol and had subjected itself to a penalty for diversions from January 1, 1934 to March 26, 1934 in the sum of $2349 and to a further penalty for diversions from March 27, 1934 to November 1, 1934 in the sum of $9882, and it demanded settlement or appropriate action would be taken to protect the federal government's interest.

The United States never took any action either civil or criminal against the principal. However, acting upon the warning contained in the letter of the federal government, the surety communicated with the defendants here and advised them that, in view of certain information which it had received from the government, it would be advisable for them to settle the claim. Defendants declined to do so on the ground that the government did not have a valid and enforceable claim against the Ideal Perfume Manufacturing Company, Inc., and that they had evidence in their possession which would refute such claim. The surety upon request was given an opportunity to inspect such evidence and sent its counsel to Providence to do so. Nevertheless, after such inspection was made, the surety still urged the defendants to settle the government's claim, pointing out that it would not be wise to contest it. Finally the surety informed the defendants, by letter of January 31, 1941, that the government was willing to accept in full settlement of its claim a sum equal to one-third thereof, or $2783, and the surety urged defendants to consent to such settlement, and, as indemnitors under their bond of indemnity, to forward funds to enable the surety to dispose of the matter. This the defendants refused to do and so notified the surety in writing. Notwithstanding such refusal, the surety, on February 26,

1941, settled the claim with its own funds in the sum of $2783, and has brought the instant suit to recover such sum with interest from these defendants as indemnitors under their bond of indemnity.

In the trial of the case the defendants were permitted to introduce the evidence upon which they would have relied to defeat the government's claim. They also introduced evidence showing that at all times they denied to the surety any liability of the Ideal Perfume Manufacturing Company, Inc. and made efforts to acquaint the surety with the reasons why they were convinced that the government had no valid claim against said company and why no settlement should be made.

They were permitted to introduce such evidence apparently in order to show that the plaintiff had not acted in "good faith" in settling the government's claim. But when the trial justice was confronted, at the conclusion of all the evidence, with the plaintiff's motion for a directed verdict, he did not regard defendants' evidence as pertinent on the question of "good faith" as that term was used in the bond of indemnity. If it was evidence of a lack of good faith on the part of the plaintiff, it would, regardless of its weight or credibility, have entitled the defendants to go to the jury.

Whether or not defendants' evidence raised a question for the jury on the good faith of the plaintiff is a question that can be answered only by first examining the terms of the bond of indemnity. The defendants agreed therein "to pay over, reimburse and make good to the Company, its successors and assigns, all sums and amounts of money which the Company or its representatives shall pay or cause to be paid, or become liable to pay, on account of the execution of such instruments, and on account of any damages, costs, charges and expenses of whatsoever kind or nature, including counsel and attorneys' fees which the Company may pay, or become liable to pay thereunder, or in connection with any litigation, investigation or other matters connected therewith, such payment to be made to the Company as soon as

it shall have become liable therefor, whether the Company shall have paid out said sum or any part thereof or not."

This clause is broad enough to make this bond one of indemnification for the indemnitee upon the fixing of liability against it even before the indemnitee suffers an actual loss. But even though such is the obligation of the indemnitors, there might still be a question under the above language whether or not the liability was to be first fixed by some act of the law before the indemnitors could be said to be bound, were it not for the broad and comprehensive clause. which immediately follows. This clause reads: "And the Indemnitors further agree that in any accounting which may be had between the indemnitors and the Company, the Company shall be entitled to credit for any and all disbursements, in and about matters herein contemplated, made by it in good faith under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, *whether such liability, necessity or expediency existed or not.*" (italics ours)

This last clause which we have emphasized by italics is indeed of a most sweeping character. As we read it, especially in the light of all that precedes it, we are confronted with the well-nigh inescapable conclusion that the parties to this bond have lodged in the indemnitee a discretion limited only by the bounds of fraud. In other words, unless it could be shown that such loss as the indemnitee suffered in the instant case was the result of fraud on its part, or of collusion between it and the agents of the United States, which would be the same thing as fraud, these defendants would be foreclosed by the very terms of the bond from claiming that the plaintiff had not acted in good faith in settling the government's claim despite defendants' prior refusal to consent to such settlement.

In their brief and also in their argument before us, the defendants hinted at the possibility of collusion between the plaintiff and the agents of the United States when they urged that the "Jury could have found it (the settlement)

was made to keep the plaintiff in the good graces of Federal Authorities and to have no question raised as to future bonds . . . ." But the difficulty with the defendants' argument is that there is no evidence of such conduct on the part of the plaintiff and the agents of the United States to support such claim.

The defendants have also argued that, since the plaintiff had actual notice of a defense to the government's claim, it could not say that it had acted in "good faith" in settling such claim. The case cited by them in support of this contention—*Thurber* v. *Corbin,* 51 Barb. (N. Y.) 215—has no application to the facts of the instant case, in view of the above-quoted broad language of the indemnity bond. Nor is the defendants' citation of *Richmond* v. *Ashcraft,* 137 Mo. App. 191, which was an action of ejectment to quiet the title to land, any better authority on the question of the meaning of the term "good faith" as it is used in connection with other broad language in the indemnity bond before us.

Defendants' reliance on the common-law rule that the indemnitee seeking to recover from his indemnitor is charged with the obligations of diligence and good faith, and their citation of *Aetna National Bank* v. *Hollister,* 55 Conn. 188, 212, are of no help to them. Indeed, that case might conceivably be cited against them, because there, at page 213, after adverting to the common-law rule, and referring to the evidence of the conduct of the surety which it said "might naturally be supposed to indicate a possible want of confidence in the claim against him" (the defendant), the court went on to say, "nevertheless, *in view of the strong provisions of the bond,* we do not think the above facts constitute a legal defense." (italics ours)

Defendants also cite *Merchants & Miners Bank* v. *Gaujot,* 102 W. Va. 643, at 651, in further support of their contention that it was plaintiff's obligation to show that it had acted in good faith. But that was a case on a promissory note and there was no bond containing such broad language as that of the bond in the case at bar. Therefore, that case is of no

authority here. Neither is the case of *Pinkerton Bros. Co.* v. *Bromley,* 119 Mich. 8, in point, as in that case there was a claim of an inference of fraud from the circumstances of the transaction which was involved in the litigation, and the court expressed the view that the facts left "little doubt that the scheme was a fraudulent one from its inception."

There was no evidence in the instant case from which any inference of fraud could be reasonably drawn. The facts that the government delayed over four years in making its claim, that it was willing to take the comparatively small sum of $2872 in full settlement of its claim which, with interest added, amounted to about $18,000 and that it never brought any civil or criminal action against the Ideal Perfume Manufacturing Company, Inc., do not, taken singly or together, raise any inference of fraud on the part of the plaintiff in settling with the government under such circumstances.

As a final argument, more or less in connection with their contention that the evidence raised an issue as to plaintiff's good faith for the jury to determine, defendants contend that the plaintiff should not, over their protest, be allowed to settle the government's claim and thus prevent a trial of the real issue between the government and the Ideal Perfume Manufacturing Company, Inc., namely, whether there had been a breach of its bond and therefore whether the plaintiff, which was surety thereon, was liable to pay any sum at all to the government. In support of this contention they cite *City of New York* v. *Baird,* 176 N. Y. 269. This is perhaps the nearest to being an authority for the defendants but, in our opinion, it is not in point, principally for the reason that the bond of indemnity given to the city of New York in that case did not give it the almost unlimited discretion which the bond in the case at bar gives to the plaintiff. Furthermore, there were circumstances which accompanied the trial of the action on the claim against the city of New York and its final settlement by the city over the protest of its indemnitors under the bond of indemnity and which, it seems to us, justified the New York court of appeals in find-

ing that the case should have gone to the jury on the question of the city's good faith. These circumstances were expressly pointed out by that court in its opinion as the reason for its decision.

Plaintiff, on its part, cites no Rhode Island case in point on the precise issue before us here arising out of the relation of indemnitor and indemnitee, and we have found none. It cites and discusses a number of cases where the question of good faith of one of the parties to a compromise was involved, but none of them seems to be of any real help in the case at bar. However, in our investigation we have found a case outside this state which appears in many respects quite similar to our case and which is, we think, directly in point on the main question here. *Carroll* v. *National Surety Co.*, 58 App. D. C. 3. The defendants in that case executed an indemnity agreement with the National Surety Company to induce that company to become surety on the bond of a company which had obtained a contract to collect, bale and remove waste paper from certain public buildings belonging to the United States government. The condition of such indemnity was to indemnify the surety company from and against all liability for loss, costs and damage of whatever kind which it might sustain by reason of its suretyship upon the contracting company's bond or in defending any action brought in connection therewith or in obtaining or attempting to obtain a release from any liability thereunder.

The contracting company failed to perform its contract properly and action was brought against it by the United States for damages in the amount of $5272.47. Believing that the contracting company had no defense to the action, the surety company compromised the claim for $4000 and paid that sum to the United States. The surety thereupon sued the indemnitor Carroll for such sum. He admitted the existence of the waste paper contract but for several reasons denied that the contracting company was liable to the United States in damages and claimed that to the action it had a complete defense of which he had informed the surety com-

pany and to maintain which he had offered to furnish evidence. He alleged that the surety company did not notify him of the action brought by the United States. He also alleged that it had made the settlement with the United States voluntarily, without his knowledge or consent and without giving him an opportunity to defend the government's action.

The surety company moved in the trial court for judgment on the pleadings, which was granted. On appeal the appellate court, in sustaining the trial court, said: "The plaintiff was not obliged to notify defendant of the institution of the action for damages brought against it by the Government, before compromising the same. It appears, however, from defendant's answer, that he actually knew that the suit had been begun, and that it was pending against plaintiff, for he alleges that he notified plaintiff of the defense which he claimed to have against the government's action, and that he 'held himself ready to furnish competent evidence maintaining said defense.' This latter notice, however, did not deprive plaintiff of the right to compromise the case, for under paragraph 4 (f) of the indemnifying contract plaintiff was authorized to make such a compromise . . . ." It also appeared under paragraph (6) of such contract that the surety company was given very broad discretion in making any settlement or compromise of liability. The pertinent language therein was "in settlement or compromise of any claims, suits, and judgments thereunder in good faith under the belief that it or they were liable therefor, whether liable or not, as well as of any and all disbursements on account of costs, attorney's fees, and expenses as aforesaid, which may be made under the belief that such were necessary, whether necessary or not."

It is clear from the evidence in the instant case that defendants were not entitled to go to the jury on the issue of good faith as they understood that issue. And it is equally clear that, even though they had been permitted to introduce the evidence which was excluded by the trial justice

and the exclusions of which are the alleged grounds of their other exceptions, their case would not thereby have been made any stronger, since such evidence did not go to prove that the plaintiff was guilty of fraud or collusion. Without such proof the defendants, under the broad provisions of the bond in this case, could not have established the alleged lack of good faith on the part of the plaintiff in settling the claim of the United States.

Defendants' exception to the direction of a verdict for the plaintiff and their other exceptions are, therefore, overruled and the case is remitted to the superior court for entry of judgment on the verdict as directed.

*Sherwood & Clifford, Sidney Clifford, Raymond E. Jordan,* for plaintiff.

*Waldman & Waldman, Morris S. Waldman, Maxwell W. Waldman,* for defendants.