## CENTRAL SURETY & INSURANCE CORPORATION v. MARTIN.

No. 4610.

Court of Civil Appeals of Texas. Beaumont.
Oct. 13, 1949.

Rehearing Denied Dec. 7, 1949.

774

Orgain, Bell & Tucker, Beaumont, for appellant.

Shelby K. Long, Beaumont, for appellee.

COE, Chief Justice.

This suit was instituted in the District Court of Jefferson County by appellant, Central Surety & Insurance Corporation, seeking to recover from the appellee, Roy E. Martin, the sum of $953.36, plus a reasonable attorneys' fee in the sum of $250.-00, together with interest, it being alleged by Central Surety & Insurance Corporation that it was entitled to be reimbursed by appellee under the terms of appellee's application for a bond under which J. L. Bagarry & Son made demand by affidavit against Central Surety & Insurance Corporation for loss occasioned by the dishonest acts of Roy E. Martin.

Trial was had by a jury and at the conclusion of the evidence offered by appellant, appellee made his motion for an instructed verdict; appellant also made its motion for instructed verdict. The trial court overruled appellant's motion and appellee's motion was granted. Under the instruction of the court, the jury returned a verdict in favor of the appellee, and judgment was entered that the appellant take nothing.

Appellant has assigned as error the action of the trial court in overruling its motion for instructed verdict and granting appellee's motion.

Appellant, plaintiff in the trial court, in his petition plead that application had been made, bond issued and that a good faith payment had been made to J. L. Bagarry & Son, and that by the terms of the application for bond Roy E. Martin had agreed to reimburse the appellant for sums expended by it as a result of the execution of the bond in favor of J. L. Bagarry & Son. Appellee, in his answer, generally denied appellant's allegations and further plead that the bond issued to J. L. Bagarry & Son was not breached and that the loss of J. L. Bagarry & Son did not exceed $200. Upon the trial to the jury the appellee testified that he executed an application for bond with Central Surety & Insurance Corporation; that he was bonded by said company and that demands were made upon him to reimburse appellant for the amount of money paid J. L. Bagarry & Son as a result of Mr. Bagarry's demand by a proof of loss affidavit on appellant, and that he had refused to make such payment. Appellant introduced in evidence the application for bond signed by Roy E. Martin, the proof of loss affidavit executed by J. L. Bagarry and canceled check by which payment was made to J. L. Bagarry & Son in the amount of $953.36. J. L. Bagarry acknowledged receiving payment. Mr. Tom Hanlon testified that he had made a thorough investigation of the claim, and that as attorney for appellant made a good faith payment to J. L. Bagarry & Son of the amount shown by the check. The pertinent provisions in the application for bond is as follows: " * * * that the undersigned will at all times indemnify and keep indemnified the corporation and hold and

save it harmless from and against any and all damages, loss, costs, charges, and expenses of whatsoever kind or nature, including counsel and attorneys' fees, which the corporation shall or may at any time sustain or incur by reason or in consequence of having executed the bond herein applied, or by reason or in consequence of the execution by the corporation of any and all other bonds at any time heretofore or hereafter executed for me or at my instance or request; and I will pay over, reimburse and make good to corporation, its successors or assigns, all sums and amounts of money which the corporation or its representatives shall pay or cause to be paid or become liable to pay on account of the execution of any such instruments and on the account of any damages, costs, charges and expenses of whatsoever kind or nature, including counsel and attorneys' fees which the corporation may pay or become liable to pay by reason of the execution of any such instruments or in connection with any litigation, investigation or other matters connected therewith, and such payments to be made to the corporation as soon as it shall become liable therefor, whether the corporation shall have paid out said sum or any part thereof or not. And I further agree that in any accounting which may be had between me and the corporation, the corporation shall be entitled to credit for any and all disbursements in and about the matters herein contemplated, made by it in good faith under the belief that it is or was liable for the amount so disbursed or that it was necessary or expedient to make such disbursements, whether such liability, necessity or expediency existed or not."

The bond executed by appellant to J. L. Bagarry & Son undertook to insure said firm against all direct loss resulting from larceny, theft, embezzlement, forgery, misappropriation, wrongful abstraction or wrongful misapplication of funds or any other acts of fraud or dishonesty committed by appellee. Mr. J. L. Bagarry testified that on January 11 (the case was tried in January, 1949) he made an inventory of the merchandise contained in a truck which was used by appellee in selling merchandise for J. L. Bagarry & Son; that on that date there was merchandise in the truck amounting to $3,439.11; that on that date the appellee left Beaumont, Texas, with said truck and merchandise for the purpose of selling same in Highlands, Bay City and that territory; that appellee failed to return from that trip and the truck was picked up by his son and an officer in Liberty, Texas; that on February 6th another inventory was made of the stock of goods in the truck, and was found to be in the sum of $1,499.43 with the resulting shortage being $1,939.68; that after allowing appellee certain credits the net shortage was $953.36, the exact amount paid by appellant to J. L. Bagarry & Son under the Fidelity bond in question.

Appellee contends, as he did in the trial court, that there was no error in the action of the trial court in instructing a verdict in his favor for the reason that there is not evidence that the defendant misappropriated funds or in any way committed a fraudulent act at any time while an employee of J. L. Bagarry & Son. Appellee's contentions are, in substance, that it not being shown that appellant was legally liable to J. L. Bagarry & Son for the amount paid by it under the bond in question, that they are not entitled to recover against appellee for the sum so paid, and cites as authority to support this contention the case of Girard Fire and Marine Insurance Company v. Koenigsberg et al., Tex.Civ.App., 65 S.W.2d 783. Appellant contends that under the application for bond, appellee had bound himself to reimburse appellant for sums expended by it in good faith as a result of the execution of the bond in favor of J. L. Bagarry & Son, and that appellee's liability to appellant is fixed as a matter of law by the provisions of said application for bond. It will be noted that in the application for bond, appellee bound himself to pay over, reimburse, and make good to appellant all sums and amounts of money appellant may pay out or cause to be paid or become liable to pay on account of the execution of said instrument; and on account of any damages, costs, charges and expenses of whatever kind or nature, including counsel and

attorneys' fees which the appellant may pay or become liable to pay for reason of the execution of any such instrument or in connection with any litigation, investigation or other matters connected therewith, and such payments to be made by appellant as soon as it shall become liable therefor, whether appellant shall have paid out said, sum or any part thereof or not. Followed by the further provision which we feel is of controlling importance in the disposition of this case as follows: "And I further agree that in any accounting which may be had between me and the corporation, the corporation shall be entitled to credit for any and all disbursements in and about the matters herein contemplated, made by it in good faith under the belief that it is or was liable for the amount so disbursed or that it was necessary or expedient to make such disbursements, whether such liability, necessity or expediency existed or not." Appellee contends that this last provision in said application for bond is void and of no effect for the reason that it is against public policy. With this contention we can not agree.

In support of appellant's contention, they have cited, among others, the case of Massachusetts Bonding and Insurance Company v. Gautieri, 69 R.I. 70, 30 A.2d 848, 850, wherein it was said by the Supreme Court of Rhode Island, after quoting certain provisions in the application for bond:

"This clause is broad enough to make this bond one of indemnification for the indemnitee upon the fixing of liability against it even before the indemnitee suffers an actual loss. But even though such is the obligation of the indemnitors, there might still be a question under the above language whether or not the liability was to be first fixed by some act of the law before the indemnitors could be said to be bound, were it not for the broad and comprehensive clause which immediately follows. This clause reads: 'And the Indemnitors further agree that in any accounting which may be had between the indemnitors and the Company, the Company shall be entitled to credit for any and all disbursements, in and about matters herein contemplated, made by it in good faith under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, *whether such liability, necessity or expediency existed or not.*'

"This last clause which we have emphasized by italics is indeed of a most sweeping character. As we read it, especially in the light of all that precedes it, we are confronted with the well-nigh inescapable conclusion that the parties to this bond have lodged in the indemnitee a discretion limited only by the bounds of fraud. In other words, unless it could be shown that such loss as the indemnitee suffered in the instant case was the result of fraud on its part, or of collusion between it and the agents of the United States, which would be the same thing as fraud, these defendants would be foreclosed by the very terms of the bond from claiming that the plaintiff had not acted in good faith in settling the government's claim despite defendants' prior refusal to consent to such settlement."

The provisions of the application for bond referred to by the court in this case are very similar or practically identical with the provisions contained in the application for bond in the instant case. That the nature of an indemnitor's liability upon an indemnity contract must be determined by its provisions seems to be the settled law of this State. See Russell v. Lemons, Tex.Civ.App., 205 S.W.2d 629, 631, where the general rule is announced as being: "The nature of appellee's liability on an indemnity contract must be determined by its provisions, following the familiar maxim of the law that, as a man binds himself, so shall he be bound." See, also, Rublee v. Stevenson, Tex.Civ.App., 161 S.W.2d 528; 23 Tex.Juris., p. 526, Sec. 7. Appellant has cited many other cases in support of its contentions, among which is the case of United States Fidelity & Guaranty Company v. Jones, 5 Cir., 87 F.2d 346, 347 (being the case which arose in Texas). The effect of this holding is that liability under the bond is not a condition precedent to a right of recovery on the indemnity contract. In the course of the opinion the court stated: "It is noted

that the obligation assumed by the appellee is not confined to that of a common-law principal to reimburse his surety for any amount paid upon his debt, in which the liability of the principal is controlling, but that a special undertaking was assumed by appellee, which must be determined from a construction of the written contract", citing Fidelity & Casualty Company v. Harrison, Tex.Civ.App., 274 S.W. 1002. See the last above cited case for authority that the provisions of the contract here in question were not void as being against public policy. Here the court (quoting from the case of Guarantee Company of North America v. Pitts, 78 Miss., 837, 30 So. 758, 759, by the Supreme Court of Mississippi) said:

" 'There is nothing wrong or unreasonable, or against public policy, in this stipulation. Parties sui juris may lawfully make such stipulations, and are bound by them. Under such contract the company was authorized in advance, as a condition of guaranteeing, to exercise discretion as so paying any demand made by the holder of the guarantee, and was bound only to act without fraud in settling a claim, and, thus paying, is entitled to hold the party guaranteed for reimbursement; and the voucher proves the claim, if not shown to have been infected with fraud. The expense, delay, trouble, and risk of loss to the guarantee company is a sufficient safeguard against an unwarranted payment; and, without such a stipulation as complained of here, guarantee companies could not safely do business anything like as cheaply as they do, and to the evident advantage of the parties and of the general public.'

"The other decisions last cited are substantially to the same effect and upon the same reasoning, all of them, however, qualifying the holding with the statement that the action of the surety company in making the payment must be in good faith and free of fraud. We adopt the conclusion so reached in those decisions, because we believe the same is sound, and it is directly applicable to this case. In his pleadings the appellee did not tender the issue of fraud or want of good faith on the part of the express company in paying the checks, or on the part of the indemnity company in reimbursing the express company for the amount so paid by the latter, and no evidence was offered tending to sustain any such contention if it had been made. Hence, the presumption must be indulged that the express company paid the checks in good faith and that the indemnity company reimbursed the express company for such payments in good faith, and without any fraudulent collusion with that company or with any one else. * * *" [274 S.W. 1004.]

There is no question of bad faith or fraud on the part of the appellant in making the payment to J. L. Bagarry & Son under the indemnity bond, either by the pleading or evidence. The evidence showing that the said payment was made in good faith, we hold that the appellee become bound, as a matter of law, to reimburse appellant for such payment without the necessity of appellant proving its liability under the indemnity bond. It follows that we are of the opinion that the trial court erred in granting appellee's motion for instructed verdict and in overruling appellant's motion for such a verdict; it was stipulated in the trial court that $250 was a reasonable attorneys' fee to be taxed in the event appellant should recover. It is the judgment of this court that the judgment of the trial court be reversed and that judgment be rendered for appellant in the sum of $953.36, together with the further sum of $250 attorneys' fees with interest thereon at the rate of 6 per cent. It is further adjudged that appellee pay all costs.