558 P.2d 1063

**Lee W. MARTIN, dba Clearwater Bail Agency, Plaintiff-Appellant,**

v.

**Elmer LYONS, Defendant-Respondent.**

**No. 12064.**

Supreme Court of Idaho.

Jan. 18, 1977.

George Reinhardt, of Rapaich & Knutson, Lewiston, for plaintiff-appellant.

William H. Foster, Grangeville, for defendant-respondent.

DONALDSON, Justice.

This is a contract action arising from a bail bond agreement between appellant surety Lee W. Martin and respondent principal Elmer Lyons. The agreement was made after the prosecuting attorney of Clearwater County charged Lyons' partner Charles E. Mendenhall with resisting arrest in violation of I.C. § 18–705, which provided a penalty of up to one year in jail and a maximum fine of $5,000. The Probate Court of Clearwater County did not give Mendenhall a preliminary hearing but ordered him to answer the charge in the district court and set bail in the amount of $500 which Martin posted by way of a bail bond. In the subsequent legal proceedings in the district court, Mendenhall filed a motion to quash the criminal complaint which had been filed against him on the ground that he had not been afforded a preliminary hearing in the probate court. The district court granted Mendenhall's motion but there is no indication in the record as to whether the district court entered an order exonerating Mendenhall's bond. There is also no indication in the record as to whether the court ordered that the case be resubmitted to the probate court. Thereafter, the prosecuting attorney filed an amended complaint in the probate court. The probate court scheduled a preliminary hearing. When Mendenhall failed to appear at the hearing, the probate court entered an order forfeiting his bail. The court also ordered Martin to pay the court $500 in cash in lieu of the posted bond and pursuant to such order, Martin did so. Martin then initiated a contract action in the district court against Lyons based upon an indemnification clause in the bail bond agreement. Martin sought recovery of the $500 plus interest and attorney's fees. After Martin and Lyons filed motions for summary judgment the district court denied Martin's motion for summary judgment and granted Lyons' motion.

On appeal respondent Lyons argues that he was not actually liable on the bond because the "Probate Court had no jurisdiction to forfeit a bond which had been exonerated by the District Court more than two years earlier." He contends that the appellant surety has no right to indemnification for honoring an obligation that its principal was not legally obligated to honor. Appellant Martin questions the validity of respondent's theory arguing that there is no indication in the record that the bond was ever exonerated. He adds, however, that despite the complexity of the procedural aspects of the case, the case can be resolved on the basis of a simple contract interpretation. We agree.

We do not feel that the exoneration issue is significant to the outcome of this case. Nevertheless we feel that a brief review of the procedural aspects of this case

is desirable. I.C. § 19–1603 reads as follows:

> "The motion [to quash] must be heard at the time it is made, unless for cause the court postpones the hearing to another time. If the motion is denied, the defendant must immediately answer the indictment, either by demurring or pleading thereto. *If the motion is granted, the court must order that the defendant, if in custody be discharged therefrom; or, if admitted to bail, that his bail be exonerated*; or, if he has deposited money instead of bail, that the same be refunded to him, unless it directs that the case be resubmitted to the same or another grand jury [or to the probate court]." [1] (emphasis added)

According to I.C. § 19–1603, a court can do one of two things when it grants a petitioner's motion to quash. It can order that the case be resubmitted to the probate court. If the court does order resubmission, I.C. § 19–1604 provides:

> "If the court directs the case to be resubmitted, the defendant, if already in custody, must so remain, unless he is admitted to bail; or if already admitted to bail or money has been deposited instead thereof, the bail or money is answerable for the appearance of the defendant to answer a new indictment [or information]."

If the court does not order resubmission, however, the opposite result inheres—the court *must* order exoneration of defendant's bail. The court has no discretion whatsoever in this regard. The statutory language of I.C. § 19–1603 is explicit—exoneration has to be ordered.

It is unknown whether the district court ordered the case against Mendenhall resubmitted. If the district court did order resubmission, the bail was legitimately subject to forfeiture when Mendenhall did not appear at the preliminary hearing set by the probate court. The dissent concedes that Lyons would have been liable under

the indemnification clause if resubmission had been ordered. Since the record is silent on the subject, however, the dissent indulges in the usual presumption that the proceedings in the district court were proper. As the Idaho Supreme Court stated in *Gardner v. Fliegel*, 92 Idaho 767, 450 P.2d 990 (1969) "It is fundamental that error will not be presumed, but must be shown affirmatively by the appellant on the record." The dissent concludes that because Martin has failed to establish that the case was resubmitted, it must be presumed that resubmission did not occur. And if resubmission did not occur, it necessarily follows that the probate court's forfeiture of the bail bond was invalid. The principal or surety could have resisted the forfeiture on the grounds that the probate court did not have jurisdiction to forfeit the bond. Mendenhall was not required to appear at the preliminary hearing set by the probate court because I.C. § 19–1604 mandated that the bail should have been exonerated by the district court when it granted Mendenhall's motion to quash.

█ With this much of the dissent we agree. We do not agree, however, that the presumed invalidity of the forfeiture affects Martin's right to recover under the indemnification clause of the bail bond agreement. The dissent cites Corpus Juris Secundum for the proposition that an indemnification clause does not protect the surety against loss through a payment that he was not legally obligated to make. Special emphasis is given to the statement in 42 C.J.S. Indemnity § 14(2) that "the amount so paid is not conclusive on the indemnitor, and the indemnitee takes the risk in an action against the indemnitor of establishing the facts on which the indemnitor's liability depends as well as the reasonableness of the amount paid." These general statements of the law of indemnity, however, are prefaced by the proviso "*except as the rule may be affected by the terms of the instrument itself.*" 42 C.J.S. Indemnity

---

1. Idaho Code § 19–1304 makes the provisions of Idaho's criminal procedure statutes concerning indictments applicable "in the same manner and to the same extent, as near as may be" to informations and all prosecutions and proceedings thereon. See *Thompson v. Adair*, 36 Idaho 790, 214 P. 214 (1923).

§ 14(2). (emphasis added) It is a well established principle of surety law in regard to indemnification that the "surety will * * * be permitted to rely on the exact terms of his agreement." Stearns, Law of Suretyship § 11.36. Although the issue is one of first impression in Idaho, this principle has received consistent endorsement in the case law of other jurisdictions. *United States Fidelity & Guaranty Co. v. Jones*, 87 F.2d 346 (5th Cir. 1937); *National Surety Corp. v. Peoples Milling Co.*, 57 F.Supp. 281 (6th Cir. 1944); *English v. Century Indemnity Co.*, 342 S.W.2d 366 (Tex.Civ.App. 1961); *Central Surety & Insurance Corporation v. Martin*, 224 S.W.2d 773 (Tex.Civ. App.1949); *Russell v. Lemons*, 205 S.W.2d 629 (Tex.Civ.App.1947); *Massachusetts Bonding & Insurance Co. v. Gautieri*, 69 R.I. 70, 30 A.2d 848 (1943).

■ In the absence of an agreement to the contrary, Lyons would not be obligated to indemnify Martin for a disbursement that Martin was not legally obligated to make. But if the indemnification clause agreed to by Lyons and Martin allows indemnification for payments that are not legally required of the surety, then Lyons would be so obligated irrespective of whether the forfeiture of Mendenhall's bail was valid or invalid.

■ We acknowledge the indemnification clauses in some of the above cited cases contain more explicit statements of the surety's right to be indemnified for "voluntary" disbursements. The indemnification clause in *Massachusetts Bonding & Insurance Co. v. Gautieri, supra*, for example, reads as follows:

"And the Indemnitors further argue that in any accounting which may be had between the indemnitors and the Company, the Company shall be entitled to credit for any and all disbursements in and about matters herein contemplated, made by it in good faith under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, *whether such liability, necessity or expe-*

*diency existed or not.*" 30 A.2d at 850 (emphasis added)

We do not think that the degree of specificity of the indemnification clauses in the cases was crucial to the results. The controlling legal principle in all of these cases seems to have been that the "nature of an indemnitor's liability upon an indemnity contract must be determined by its provisions." *Central Insurance Co. v. Martin, supra*, 224 S.W.2d at 776. If the indemnification clause in the present case can reasonably be read as allowing the surety to be indemnified for "voluntary" disbursements, then Martin would be legally entitled to indemnification.

The indemnification clause obligates Lyons as follows:

"To indemnify and to at all times save harmless the Second Party and the Surety [Martin] from and against *any and all liability, demands, expenses, attorney's fees, debts, damages, judgments, or losses of every kind, character or nature* that the Second Party or the Surety shall or may at any time or for any cause sustain, incur, or be put to by reason of the execution or the arranging or obtaining the execution of the Bail Bond aforementioned or any renewal thereof or any bond issued in continuance thereof or as a substitute therefor * * *. To pay the Second Party or the Surety immediately upon the *declaration of forfeiture* of said bail bond the penal amount thereof without demand or notice of any kind." (emphasis added)

We are aware that the indemnification agreement was drawn by the surety. It is an elementary principle of surety law that the indemnification clause should therefore be strictly construed in favor of the principal and against the surety. *Massachusetts Bonding & Ins. Co. v. Darby*, 59 F.Supp. 175 (D.C.1945); *Maryland Casualty Co. v. Zahner*, 190 S.W.2d 996 (Mo.App.1945). But even given strict construction against Martin, the plain language of the agreement indicates that the parties intended that the surety should be indemnified for all good

faith payments made by the surety in behalf of its principal.

Lyons and Martin agreed that the surety should be reimbursed for "any and all liability, demands, expenses, attorney's fees, judgments or losses of every kind, character, or nature." It is difficult to conceive more encompassing language. "Any and all * * * demands * * * or losses" give rise to the surety's right to indemnification, not just those demands that have a legal foundation.

Lyons also warranted that he would pay the surety "immediately upon the declaration of forfeiture the penal amount thereof." The indemnification clause does not specify forfeiture as the operative condition that fixes Lyons' obligation to indemnify. It specifies the "declaration of forfeiture." If the clause allowed indemnification when there was a "forfeiture," an argument could be made in behalf of Lyons that the contract was referring only to a valid forfeiture. The effect of using "declaration of forfeiture" is to make indemnification operative as soon as a court declares forfeiture irrespective of whether the forfeiture can be legally sustained.

■ The dissent makes much of the fact that the decision reached by the majority could lead to unjust results in certain delineated situations. This concern is unjustified. The surety would always be subject to the obligation of good faith in making his disbursements even if the bail bond agreement, as is the case here, doesn't expressly demand that he act in good faith.

■ In the present case, counsel for Lyons *does* argue that Martin did not act in good faith when he paid the court the amount of the forfeiture. Lyons claim is based exclusively on the fact that the district court's forfeiture of the bond was illegal. Martin tendered payment to the court only after the probate court entered its order forfeiting the bail of Charles Mendenhall and ordering Martin to pay the court $500 in lieu of the posted bond. Lyons has not introduced any evidence that Martin acted in bad faith when he did so. Courts will imply a standard of good faith in these agreements if the parties do not agree to one expressly. But courts will not establish the stringent standard of good faith advocated by Lyons. If bad faith could be established merely by citing an illegal forfeiture, indemnification provisions obligating principals to indemnify sureties for voluntary disbursements would be of no effect.

■ An opposite result would be reached if the circumstances of the case indicated that the bail bondsman did not act in good faith. The fact that there is a court order of forfeiture does not automatically entitle a surety to indemnification.

Reversed. Costs to appellant.

SHEPARD and BAKES, JJ., concur.

BISTLINE, Justice, dissenting.

Appellant Martin's case is simply this: (1) the case is naught but "simple contract interpretation" and can be resolved by invoking "the plain language of the bail bond agreement"; (2) his indemnity contract with respondent Lyons, the indemnitor, provides that Lyons will "pay the appellant immediately upon the declaration of forfeiture of said bail bond the penal amount thereof"; (3) the bond was declared forfeited; and (4) it follows that Lyons owes Martin's Clearwater Bail Agency $500.00.

Respondent Lyons insists that the case requires a two-stage analysis: (1) his liability as indemnitor cannot survive the extinction of the underlying bail bond agreement; (2) such liability no longer exists because the "said bail bond" was exonerated when the district court quashed the criminal complaint against Mendenhall.

The majority opinion adopts the simple contract interpretation, saying that on this view, it becomes unnecessary

" . . . to address the issue of whether exoneration automatically occurred when the district court quashed the criminal complaint . . . [or] *to decide what effects exoneration would have on a surety's right to indemnification.*"

The majority opinion cites no authority for its holding that a contract between an indemnitor (Lyons) and indemnitee (Martin)

can be enforced regardless of whether or not the indemnitee's underlying obligation (the bail bond) has already been discharged; nor am I able to find any; nor did I expect to. It is a fundamental principle of surety law that discharge of the underlying principal-surety obligation acts as a discharge of the indemnity over from supplemental sureties. 72 C.J.S. Principal & Surety §§ 226, 230. Any contrary principle, such as is adopted by the majority today, could lead to strange results. An indemnitor could find himself liable even where the accused's failure to appear was attributable to his demise; or if the surety (the bail bondsman) imprudently accepted greater liability by allowing a modification of the underlying bail agreement; or if there were collusion between the bail bondsman and the court.

Because such unconscionable results would be intolerable, the principle has evolved that

"A bond or contract of indemnity does not protect the indemnitee against loss through a payment which is entirely voluntary on his part, in the sense that there is no legal obligation on him to make it, unless such payment is made with the knowledge and approval of the indemnitor.

"*The amount so paid is not conclusive on the indemnitor, and the indemnitee takes the risk in an action* against the indemnitor of establishing the facts on which the indemnitor's liability depends as well as the reasonableness of the amount paid." 42 C.J.S. Indemnity § 14(2) (Emphasis added.)

The bondsman, in short, must act "in good faith and with ordinary care" when he is held to accountability on the principal obligation; otherwise, he may not collect over from his indemnitor. The test will be whether or not he "fails to set up a defense which would probably have been successful." 42 C.J.S. Indemnity § 40.

This Court should not avoid the question of the validity of the underlying obligation. That question was necessarily before the court below. What is important is the order entered when proceedings against Mendenhall were quashed. According to I.C. § 19–1603, and the authority of *Thompson v. Adair*, 36 Idaho 790, at 796, 214 P. 214, at 216 (1923),

"If the motion is granted, the court *must* order that the defendant . . . if admitted to bail, that his bail be exonerated . . . *unless* it directs that the case be resubmitted."

If the court directs the case to be resubmitted, then, according to I.C. § 19–1604, the opposite result follows:

" . . . if already admitted to bail . . . the bail or money is answerable for the appearance of the defendant to answer a new indictment [or information]; . . . "

If the court did not order the case against Mendenhall resubmitted, that action was over, finished, and Mendenhall could not be legally required to appear therein again. If he did do so, which we do not know, the bail was subject to forfeiture when Mendenhall failed to appear. The court's sole discretion was in deciding whether to resubmit or not to resubmit. Where resubmission was not ordered, on timely motion the court would be required to order that the bail be exonerated. This procedure has been the settled law of Idaho for over fifty years. *Thompson v. Adair, supra.*

The record presented here fails to show us whether, in granting the motion to set aside, the district court did or did not order resubmission. Error being never presumed, I would indulge the usual presumption that the proceedings below were proper. *Gardner v. Fliegel*, 92 Idaho 767, 450 P.2d 990 (1969). I would presume that the district judge, who had the order granting the motion to quash Mendenhall's criminal complaint before him, noted that the order did not direct that the case be resubmitted. Therefore, he would have to find that the underlying obligation (the bail bond) had been or was entitled to be exonerated. Lyons' motion for summary judgment was properly granted.

While it may very well have been that the case was directed to be resubmitted, on a silent record this Court can not properly

so presume. Appellant Martin, who carries the burden of proving error, was required to furnish this Court with the order calling for resubmission. It is not to be presumed, at least by this member of the Court, that the trial judge held against appellant if the record before him did in fact show that the case had been ordered to be resubmitted, and the bond was still liable for Mendenhall's appearance.

On the matter of the probate court having entered an order declaring the bail forfeited, no problem is presented. If the case was in fact ordered to be resubmitted, it was then back in the probate court, and on Mendenhall's default in failing to appear, the forfeiture order was valid. On that state of facts, however, it is not readily believed that the trial court would have held against the bail bondsman. But, on the contrary situation, i. e., if the case was not ordered to be resubmitted, that action was conclusively over, and the order of the probate court was wholly void as in excess of his having any jurisdiction to enter it. Observing from such record as is before us that the probate judge had, contrary to law, committed Mendenhall to jail without affording him a preliminary hearing, I would not be caused a great amount of trouble in assuming that the order forfeiting the bond was of the same ilk.

Taking it that the appellant was confronted with such an order, and not forgetting his specialized field, and his contractual right to recover back from respondent attorney's fees which he might spend in whatever amount, I would require of a bail bondsman, threatened with such an order, that, in an exercise of good faith and fair dealing, he first make a tender of the defense to respondent before surrendering the forfeited bond. Instead he gave respondent no notice whatever of the demand by the probate court, choosing no doubt to pay over the $500.00 readily and in that manner insure his relationship with the court, whatever it may have been.

I would affirm.

McFADDEN, C. J., concurs in the dissent.