# United States Court of Appeals

## For the First Circuit

No. 02-1006

FIREMAN'S INSURANCE CO. OF NEWARK, NEW JERSEY,

Plaintiff, Appellee,

v.

TODESCA EQUIPMENT CO., INC., TODESCA EQUIPMENT COMPANY,
POWER LINE, INC., RHODE ISLAND SAND & GRAVEL CO., INC.,
EAST PROVIDENCE ASPHALT & CONCRETE CO., ALBERT M. TODESCA,
THOMAS RUSSO, CHARLES TODESCA AND PAUL TODESCA,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary M. Lisi, U.S. District Judge]

Before

Selya, Circuit Judge,
Coffin and B. Fletcher[*], Senior Circuit Judges.

D. Ethan Jeffery with whom Charles R. Bennett, Jr., and Hanify & King were on brief for appellants.
Brian J. Lamoureux with whom William M. Dolan III and Brown Rudnick Berlack Israels LLP were on brief for appellee.

November 6, 2002

[*]Hon. Betty B. Fletcher, of the Ninth Circuit, sitting by designation.

**COFFIN**, <u>**Senior Circuit Judge**</u>. Appellants, a group of affiliated construction companies and related individuals, appeal from an order of the district court granting summary judgment to appellee, surety, on its complaint seeking indemnification from appellants for certain payments the surety made on behalf of appellants. Finding no errors of law, we affirm.

I. <u>Background</u>

Appellants, as principals and indemnitors, entered into a continuing indemnity agreement with surety Fireman's Insurance Company of Newark, New Jersey ("Fireman's"), in March 1991. Pursuant to the indemnity agreement, Fireman's issued various bonds, intended to guarantee performance and payment to subcontractors and suppliers, on behalf of appellants for construction projects involving companies with which appellants were allied or in which they were beneficially interested. In exchange, appellants agreed to indemnify and hold Fireman's harmless for all losses and expenses it incurred under the bonds and provided Fireman's with broad discretion to determine whether a claim should be paid, settled, or challenged. Although appellants also entered into indemnity agreements with Reliance Insurance Co., previously a plaintiff and an appellee in this

case, the Reliance portion of the district court judgment is no longer at issue.[1]

In October 1993, Coken Company ("Coken") filed a lawsuit against Fireman's in Providence County Superior Court seeking $44,371.53 for subcontracting work it had performed for companies named in appellants' indemnity agreement for which it had not been paid. Fireman's did not file an answer to Coken's complaint, and no action occurred in the lawsuit until March 1997, when Coken filed for summary judgment. Fireman's did not respond to Coken's summary judgment motion and judgment was entered against Fireman's for $139,326.34, plus interest and costs, in June 1997.[2] An execution, incorporating costs and interest, was subsequently obtained by Coken in the amount of $153,696.98 against Fireman's. Although the record is unclear as to when payment was made, the parties appear to agree that Fireman's eventually paid Coken $207,855.55 and incurred attorney's fees of $17,285.79 in the matter.

---

[1]Appellants informed the court at argument that Reliance had settled its claims. Further, appellants waived any arguments against the district court judgment as it related to Reliance by not raising them before this court.

[2]In its complaint, Coken sought $140,072.63 from Reliance in addition to the $44,371.53 it sought from Fireman's. The amounts awarded by the district court judgment, $53,733.56 plus interest and costs against Reliance and $139,326.34 plus interest and costs against Fireman's, appear to be reversed from the amounts Coken sought from Reliance and Fireman's in its original complaint. Appellants' arguments with regard to this anomaly are discussed infra.

In August 2000, Fireman's filed suit against appellants in the federal district court of Rhode Island seeking recovery of more than $315,000 that it had paid out to various claimants under the bonds. The Coken payment constituted the largest payout for which Fireman's sought repayment. In July 2001, Fireman's moved for summary judgment, and appellants objected, based solely upon the payment to Coken.[3] The motion was granted by the district court in October 2001 based on the recommended ruling of the magistrate judge.[4]

Appellants allege on appeal that the district court made errors of law in granting summary judgment to Fireman's. We review the district court's order de novo, "construing the record in the light most favorable to [the non-movant] and resolving all reasonable inferences in its favor." Davric Maine Corp. v. Rancourt, 216 F.3d 143, 146 (1st Cir. 2000). Summary judgment is appropriate if the evidence presented by appellants is "'merely colorable, or is not significantly probative' to conjure a genuine issue of material fact." Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).

---

[3]When the magistrate judge asked appellants whether they had objection to any of the other claims paid by Fireman's, appellants responded that they did not, waiving any such claims.

[4]References to the district court opinion refer to the magistrate judge's report and recommendation, which was adopted in whole by the district court.

## II. Discussion

Appellants allege that the district court erred in two respects when it granted appellee's motion for summary judgment. First, appellants argue that the district court misapplied the holding of the Rhode Island Supreme Court in Massachusetts Bonding & Insurance Co. v. Gautieri, 30 A.2d 848 (R.I. 1943), and, in doing so, erroneously ignored the common law rule that every contract contains an implied covenant of good faith and fair dealing. Second, appellants contend that the district court incorrectly concluded that they had failed to raise a genuine issue of material fact.

### A.    Applicability of Massachusetts Bonding

In granting appellee's summary judgment motion, the district court relied upon the rule enunciated in Massachusetts Bonding, namely that when a surety brings an action pursuant to an indemnity agreement giving the surety broad discretion to pay claims, the only defense an indemnitor can raise is that the surety committed fraud or collusion in paying the claim. In Massachusetts Bonding, a surety sought recovery from the indemnitors for funds the surety paid to the United States government due to a penalty for alleged illegal activity by the principals. Massachusetts Bonding, the surety, settled the government's claim despite the principals' urging that valid defenses to the claim should be raised.

The language of the indemnity agreement required the indemnitors to pay Massachusetts Bonding for all sums that it paid "on account of any damages, costs, charges, and expenses of whatsoever kind or nature." The critical language of the agreement furnished Massachusetts Bonding with broad latitude to determine whether a claim should be paid:

> "And the Indemnitors further agree that in any accounting which may be had between the indemnitors and [Massachusetts Bonding], [Massachusetts Bonding] shall be entitled to credit for any and all disbursements, in and about matters herein contemplated, made by it in good faith under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, *whether such liability, necessity or expediency existed or not*" (italics ours).

Massachusetts Bonding, 30 A.2d at 850 ("This last clause which we have emphasized by italics is indeed of a most sweeping character.").

The court held that the expansive character of this provision, most notably the final clause, indicated that the parties had "lodged in the indemnitee a discretion limited only by the bounds of fraud." Id. As such, in order to show bad faith by the surety, the indemnitors were required to prove that the surety committed fraud or engaged in collusion with the United States in order to avoid repaying the surety. See id.

The appellants' argument that Massachusetts Bonding was incorrectly applied rests on an alleged critical factual difference between the two cases. The relevant difference,

-6-

appellants argue, is that in <u>Massachusetts Bonding</u> the principals contended that the claim should not have been paid at all, while appellants here urge that they are not responsible for any amount paid by the surety over that "actually owed" to Coken. In other words, appellants admit potential liability for the amount initially claimed by Coken, but protest liability for any increase in that amount due to the passage of time or the possible incorrect judgment amount.[5]  Appellants characterize <u>Massachusetts Bonding</u> as a case about liability, and the current case as revolving around "damages."

Because the essence of the <u>Massachusetts Bonding</u> holding derived from the nature of the agreement between the parties, we look to the language in the agreement between Fireman's and appellants.  Similar to the agreement in <u>Massachusetts Bonding</u>, the Fireman's agreement provided:

> In the event of any payment by SURETY, SURETY shall be entitled in any accounting with PRINCIPAL or INDEMNITOR(S) to reimbursement for any and all disbursements made by it in good faith in and about the matters contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to

---

[5]In their opposition to the summary judgment motion, appellants remarked that as to the original amount Coken sought from Fireman's, "Fireman's would have a good argument that it is due reimbursement of the nearly $45,000 through the indemnification clause in the bond agreement."  In their brief on appeal, appellants characterized the issue thus: "[T]he dispute here is what amount Fireman's may be entitled to recover under the Fireman's Bond -- is it entitled to recover the amounts it paid to Coken above what Coken was actually owed . . . ?"

make such disbursements, <u>whether or not such liability, necessity, or expediency existed</u>.

Further, the agreement placed complete and exclusive authority in Fireman's to determine if claims should be paid:

> SURETY shall have the exclusive right in its name or in the name of PRINCIPAL to adjust, settle or compromise any claim, counterclaim, demand, suit or judgment involving any BOND or to take whatever other action it may deem necessary, expedient or appropriate. SURETY'S determination as to whether any such claim, counterclaim, demand, suit or judgment should be settled or defended shall be binding and conclusive upon PRINCIPAL and INDEMNITORS.

Finally, the agreement required that its terms be "liberally construed so as to protect, exonerate, and indemnify SURETY." Thus, the agreement affords Fireman's the same broad discretion to settle claims as given to the surety in the <u>Massachusetts Bonding</u> agreement and in fact contains the very same language that most impressed the court in that case.

The difference between asserting that a surety should pay nothing on a claim, as opposed to arguing that a surety paid too much on a claim, is insignificant to our analysis. As the court held in <u>Massachusetts Bonding</u>:

> [U]nless it could be shown that such loss as the indemnitee suffered in the instant case was the result of fraud on its part, or of collusion between it and the agents of the United States, which would be the same thing as fraud, these defendants would be foreclosed by the very terms of the bond from claiming that the plaintiff had not acted in good faith

-8-

in settling the government's claim despite defendants' prior refusal to consent to such settlement.[6]

Given the broad discretion provided Fireman's by the indemnity agreement and the resultant applicability of the rule of Massachusetts Bonding, appellants were required to allege and prove fraud or collusion in order to avoid repayment of the claim paid by Fireman's.

Appellants next argue that even if Massachusetts Bonding applies, it should not be construed to override the Rhode Island common law principle that all contracts contain an implicit covenant of good faith and fair dealing, citing Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 66 F.Supp.2d 317, 329 (D.R.I. 1999), aff'd, 217 F.3d 8 (1st Cir. 2000). Ross-Simons, however,

---

[6]Several courts outside of Rhode Island have defined the standard slightly differently, holding that indemnification may be avoided when the surety has exhibited "fraud or bad faith." See, e.g., Fidelity & Deposit Co. of Maryland v. Bristol Steel & Iron Works, Inc., 722 F.2d 1160, 1163 (4th Cir. 1983) ("The only exception to this provision arises when the payment has been made 'through fraud or lack of good faith' on the part of the surety but any challenge to such payment must be rested solely on that claim of bad faith or fraud." (internal citations omitted)); Engbrock v. Federal Ins. Co., 370 F.2d 784, 786 (5th Cir. 1967) ("In the face of these provisions [granting Surety the right to finally, conclusively, and unconditionally bind Indemnitor by paying claims], an indemnitor may successfully attack payments made by Surety only by pleading and proving fraud or lack of good faith by Surety."); Ins. Co. of North America v. Bath, 726 F. Supp. 1247, 1251 (D. Wyo. 1989) ("Although indemnity agreements are broadly construed to effect the parties' intent, such a rule has an exception where the surety has performed on its bond either through fraud or in bad faith."). Nevertheless, the formulation of the standard enunciated in Massachusetts Bonding, requiring fraud or collusion to establish bad faith, continues to be the rule under Rhode Island law.

concerned the alleged breach of a settlement agreement, a very different form of contract than an indemnity agreement.

The court in Massachusetts Bonding considered the precise question of whether the strict language of the indemnity agreement preempted the common law rule that contracts contain an implied covenant of good faith and fair dealing. The court concluded that common law covenants were inapplicable given the stringent language of the indemnity agreement. See Massachusetts Bonding, 30 A.2d at 851 (finding inapplicable the cases cited by the indemnitors that were reliant on common law principles).[7] Further, the court in Massachusetts Bonding made no distinction between liability and damages and we perceive no such differentiation in the terms of the indemnity agreement itself. Appellants must live by the terms of their agreement, which entitle Fireman's to repayment for all claims paid by it in the absence of fraud or collusion.

---

[7]Other courts have pronounced similar holdings. See Fidelity & Deposit Co., 722 F.2d at 1163("'[R]esort to implied indemnity principles is improper when an express indemnification contract exists.'" (quoting Commercial Ins. Co. v. Pacific-Peru Constr., 558 F.2d 948, 953 (9th Cir. 1977)); Associated Indemnity Corp. v. CAT Contracting, Inc., 964 S.W.2d 276, 285 (Tex. 1998) ("'[C]ommon law principles concerning a surety who claims reimbursements for amounts paid out by it do not apply to indemnity contracts such as the one here involved.'" (quoting Ford v. Aetna Ins. Co., 394 S.W.2d 693, 698 (Tex. Civ. App. 1965)); Martin v. Lyons, 558 P.2d 1063, 1066 (Idaho 1977) ("It is a well established principle of surety law in regard to indemnification that the 'surety will . . . be permitted to rely on the exact terms of his agreement.'" (internal citations omitted)).

B.    Appellants' Failure to Raise a Genuine Issue of
      Material Fact

Appellants argue that the district court erred in holding that they did not raise a genuine issue of material fact. Specifically, they contend that their allegations regarding Fireman's conduct were sufficient to raise a question of whether Fireman's committed constructive fraud.

In Massachusetts Bonding, the principals presented the following evidence to suggest that the surety had colluded with the government: the government had waited over four years to make its claim, accepted a relatively small amount in settlement of its claim, and never brought any legal suit against the principals. These facts were not, however, sufficient to raise a genuine issue of material fact as to whether collusion had occurred. See id. at 852.

Before the magistrate judge, appellants alleged the following facts as proof of Fireman's "arbitrary and unreasonabl[e] conduct": "complete and unreasonable inactivity" in delaying several years before paying the Coken claim, failing to answer Coken's complaint or oppose Coken's motion for summary judgment, and neglecting to attempt settlement of Coken's claim. Prior to the hearing on appellee's summary judgment motion, appellants alleged that the amount of the Coken judgment against Fireman's resulted directly from Fireman's delay in paying the claim. At the hearing before the magistrate judge, however,

appellants alleged that the Providence County Superior Court erroneously transposed the amounts due Coken from Fireman's and Reliance. Although the magistrate judge offered appellants the opportunity to provide additional information regarding this assertion, appellants neglected to do so.

Fireman's pointed out at argument that the record revealed that Coken had prepared the judgments that were entered by the court. Fireman's posited that it was therefore possible that Coken reversed the amounts sought from Fireman's and Reliance in the original complaint, but corrected the error when it drafted the judgments. Whatever the cause of the changes in the amounts originally sought and those awarded, appellants have failed to present any evidence whatsoever that the manner in which this happened implied fraud or collusion on Fireman's part.

In fact, the first time that appellants alleged that Fireman's had committed fraud was in their objections to the magistrate judge's report, filed with the district court. As such, their arguments on this front must be deemed waived. See Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 990-91 (1st Cir. 1988) ("We hold categorically that an unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate."); Barden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987) ("Parties must take before the magistrate,

'not only their "best shot" but all of their shots.'" (quoting Singh v. Superintending Sch. Comm., 593 F.Supp. 1315, 1318 (D. Me. 1984)). Even if their arguments made after the issuance of the magistrate judge's report are considered, appellants raised no new facts, and instead merely recast what previously had been termed "unreasonable" as "constructive fraud."

As in Massachusetts Bonding, appellants have barely "hinted at the possibility" of fraud and have provided no evidence in support of their claim.[8] In short, the district court properly held that the facts alleged by appellants were insufficient to raise a genuine issue of material fact.

Affirmed.

---

[8]Appellants rely upon two cases to argue that they have sufficiently pled constructive fraud: Thornley Supply Co. v. Madigan, 154 A. 277, 278 (1931) ("It is a familiar principle of equity that where one of two persons must suffer a loss, the loss must be borne by the one who caused it.") and Cardoso v. Mendes, 1998 R.I. Super. LEXIS 15, 30 (R.I. Super. Ct. 1998) ("'Constructive fraud is the breach of some legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others, to violate confidence, or injure public interests.'" (internal citations omitted)). Neither of these cases, however, relate to the definition of fraud in cases such as this; both consider fraud in the context of common law equitable claims.