# UNITED STATES FIDELITY AND GUARANTY COMPANY v. SANDOVAL.

## APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF ARIZONA.

No. 125. Submitted December 18, 1911.—Decided February 19, 1912.

Payment by a surety company of the amount of a supersedeas bond after affirmance of the judgment by the Supreme Court of the Territory and notice by the Governor of the State of non-payment by the principals and that unless the judgment were paid forthwith, or excuse for non-payment shown, the company would forfeit its right to transact business in the Territory, is not a voluntary payment even if the Governor had no power to revoke the license, no ruling to such effect having been made prior to the payment.

The fact that an appeal was subsequently taken by the judgment debtors to this court from the judgment, and that on payment thereof the surety company took security for repayment from the judgment creditor in the case of reversal, does not diminish the right of the surety company to collect from the principals the amount of the debt and all of its expenses as agreed in the application for the bond.

This court will take notice of its own decision in determining the rights of surety and principal on a supersedeas bond given to secure a judgment which was subsequently affirmed by this court.

12 Arizona, 348, reversed.

THE facts are stated in the opinion.

*Mr. Eugene S. Ives* for appellant.

*Mr. Henry S. Van Dyke* and *Mr. Frank P. Flint,* with whom *Mr. G. Bullard* was on the brief, for appellees.

MR. JUSTICE McKENNA delivered the opinion of the court.

Action to recover the sum of $10,528.33 and certain

expenses on account of a judgment recovered against appellees and paid by appellant as surety on an appeal bond executed at the request of appellees.

The action was brought and tried in the District Court of Santa Cruz County, Second Judicial District of the Territory of Arizona, and resulted in a judgment for the sum of $14,683.25 in favor of appellant. On appeal to the Supreme Court of the Territory the judgment was reversed. Thereupon the case was brought here.

There is no dispute about the facts. One Epes Randolph recovered a judgment against the appellees for the sum of $10,528.33, from which they appealed to the Supreme Court of the Territory. They applied to appellant for a bond to be given on appeal to stay the judgment. In the application for the bond they covenanted "to reimburse said company [appellant] for any and all loss, costs, charges, suits, damages, counsel fees and expenses of whatever kind or nature, which said company shall, or may, for any cause, at any time, sustain or incur, or be put to for, or by reason or in consequence of said company having entered into, or executed said bond."

The judgment against appellees was affirmed by the Supreme Court and a judgment rendered against them, and the Guaranty Company (appellant here) for the amount recovered in the lower court, with interest and costs, on the twenty-seventh of March, 1908.

About the twenty-fourth of June, 1908, the company received notice from the Governor of the Territory to the effect that the judgment of the Supreme Court had not been paid; that more than thirty days had elapsed from its rendition, and that unless it was paid or sufficient excuse for its non-payment shown, the company would forfeit its rights to transact business as a surety company in Arizona. The company notified appellees by telegraph of this notice, but they failed to pay the judgment or to perfect an appeal from it to this court, and therefore the

company (appellant) paid Randolph the amount due on the judgment and interest amounting to the sum of $11,484.95. The appellant also incurred certain expenses which, with the judgment paid, amounted in all to the sum of $13,911.70.

With unimportant variations, the complaint alleged the facts which were found by the court. The appellees demurred to the complaint for insufficiency and also answered, denying some of its allegations and admitting others. They admitted the recovery of judgment against them and the application for the bond, but denied that the surety company had received notice from the Governor, as alleged, or that the company paid Randolph for them in satisfaction of the judgment any sum of money or that any sum was due. They alleged that after the judgment was affirmed by the Supreme Court of the Territory and a rehearing denied, notice of appeal to this court was duly given and that the cause was transferred to this court, where it was at the time of the answer; that no execution had been issued on the judgment and that if the company had paid the judgment it did so by reason of its own negligence, voluntarily, and not at the request of appellees, or by any order of the court, or in satisfaction of the judgment.

"The testimony shows," the Supreme Court said (p. 352), "that on March 27, 1908, the judgment of the district court was affirmed in this court, and that pursuant to the provisions of paragraph 1592, Civil Code of 1901, judgment was also entered against the Guaranty company as surety upon the appeal bond. Thereafter, within the time allowed by law, a motion for a rehearing was made, which motion was denied by this court May 19, 1908. The action having been tried before the court without a jury, an appeal to the supreme court of the United States from the judgment of the court was prayed, and was allowed by one of the justices of the court on

June 20, 1908. In the order allowing the appeal it was directed that the judgment be stayed upon the appellants filing their supersedeas bond in the sum of $20,000, to be approved by any justice of this court. This order was filed with the clerk June 22, 1908. A bond in proper form was approved by one of the justices on July fourteenth, and filed with the clerk on July 15, 1908. Citation was issued July 18, 1908, and served on July 31, 1908. It also appears that on or about June 18th, the judgment creditor, Randolph, demanded of the Guaranty company that it pay the judgment; that on June 24, 1908, the Guaranty company paid the judgment in full, and thereafter, and as a part of this transaction, took from Randolph a bond, with collateral security, for the return of the amount paid him, with interest, should the supreme court of the United States reverse the judgment of this court."

The Supreme Court sustained the trial court in holding the complaint sufficient and stating a cause of action, but it decided that the court erred in giving judgment for the amount paid by the company to Randolph, because it had not surrendered to appellees, its principals, the security it had taken from Randolph. The court, however, decided (p. 359) that the company could recover from appellees "such amounts as it reasonably expended in connection with the adjustment of the matter, for which it holds no security." These expenses were found to amount to the sum of $544.50, upon which interest was adjudged at 6 per cent from August 3, 1908, to the date of the judgment. The judgment of the District Court was modified and reduced to the amount indicated, and, as modified, affirmed, "but without prejudice to the rights of the Guaranty company to bring such further action as may be necessary to establish its rights, should a right to reimbursement of the amount of the judgment accrue to it."

The bond taken by appellant of Randolph, the judg-

ment creditor, is made the determining element by the Supreme Court of the Territory. The bond was the outcome of certain conversations, prior to the payment of the judgment, between a representative of the company and Randolph. A disagreement arose as to the effect of the conversations, the representative contending that Randolph agreed to refund the money if it should appear under any proceeding which should be started that it was not proper for the company to have paid the money. Randolph's attorney contended that as a supersedeas bond might have been filed at the very moment that the money was being paid, in the event that it should transpire that such bond was filed prior to the payment, Randolph would return the money. In consequence of this dispute, Randolph executed a bond to the Guaranty Company in the sum of $20,000, which recited the proceedings in the litigation and payment of the judgment to Randolph, and that the appellees herein were, on the twenty-fourth of June, 1908, proceeding to appeal to the Supreme Court of the United States, but had not, on said date, perfected their appeal, but "have, at the date of these presents, duly appealed to the Supreme Court of the United States from the said judgment," it was agreed that if that court should affirm the judgment, or if it should reverse the judgment and Randolph should refund the money paid to him by the company, then the obligation to be void, otherwise to remain in full force and effect. Randolph further agreed as collateral security for the bond that he would deposit, and he did deposit, with the Guaranty Company 25,000 shares of the capital stock of the Huntington Beach Company with the right in the company, if Randolph should not refund the money after the reversal of the judgment by the Supreme Court of the United States, to sell the stock and apply the proceeds to the payment of the amount paid by it, the company. Upon the affirmance of the judgment or dismissal of the appeal

the stock was to be returned to Randolph, and Randolph had the right to withdraw such stock and substitute other collateral security.

The Supreme Court of the Territory, as we have seen, made this bond and security the controlling factor in its decision. The court held that the payment of the judgment was not premature—in other words, not voluntary. In this we agree with the court. Appellant was not bound to await the issuance of an execution. The affirmance of the judgment fixed its liability. *Babbitt* v. *Finn*, 101 U. S. 7, 15. And in determining the character of the payment as voluntary or negligent, as alleged by appellees in their answer, the threat of the Governor must be given account, even if it be granted that he had no power, as held by the Supreme Court of the Territory, in this case, to revoke the license of appellant to do business in the Territory. Such ruling had not then been made, and an attempted exercise of such power would have been injurious to appellant to yield to or resist. Appellant certainly acted in good faith, and discharged the duty that it was assured it had assumed under the law. However, this may not be of consequence, and we pass to the consideration of the ground upon which the Supreme Court of the Territory based its decision. The court held, as we have seen, that appellant was justified in paying the judgment, and, having paid the judgment, it was entitled to reimbursement, but to no more, the court said, than reimbursement, and held that the only outlay it had incurred was for certain expenses, and limited the judgment to their amount.

The court argued that appellant was secured for all else, and that therefore its payment was not "an absolute one, but one conditioned that the judgment be affirmed by the Supreme Court, since it has taken and holds security satisfactory to it for the return of the money with interest, in the event the judgment is re-

versed." And such event happening, the court concluded, would result in the payment to appellant twice. In other words, if the judgment should be sustained it would collect the amount of appellees; if the judgment should be reversed it would collect the amount of Randolph. This, the court said, would be inequitable and that therefore appellant could not "claim reimbursement from its principals until its actual loss is ascertained, or at least that it may not recover without surrendering the security to its principals."

The court's conclusion, we think, is not justified. It would indeed be inequitable to permit appellant to collect more than once the money paid by it, but once, at least, it is entitled, a result which it seeks by this suit. Having paid money for its principals it did not "speculate" out of them by reinforcing their responsibility to it by taking security from Randolph. It was bound by the judgment, which it paid equally with appellees, though on account of them. It was under an absolute duty to pay, but there were contingencies upon which the payment would have to be refunded by Randolph, and to secure itself it took security from him. We repeat, it was not speculating out of its principals, but was benefiting them. It acquired securities to which they could be subrogated in the event the judgment obtained by Randolph should be reversed. This represents the parties' rights on this record. In addition, however, we may say that we know that the judgment was not reversed and that appellees' liability to Randolph has been affirmed. *Sandoval* v. *Randolph*, 222 U. S. 161.

> *Judgment reversed and cause remanded to the Supreme Court of the State of Arizona for further proceedings not inconsistent with this opinion.*