722 F.2d 1160
 FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a Corporation, The
Home Insurance Company, a Corporation, North
American Reinsurance Corporation, a
Corporation, Appellees,
v.
BRISTOL STEEL & IRON WORKS, INC., a Corporation, Appellant.
 No. 83-1166.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 5, 1983.
Decided Dec. 1, 1983.
 
 Murray H. Wright, Richmond, Va. (John G. Douglass, McGuire, Woods & Battle, Richmond, Va., on brief) and Patrick A. Thompson, Atlanta, Ga. (Steele B. Windle, III, Smith, Currie & Hancock, Atlanta, Ga., on brief), for appellant.
 Kenneth I. Jonson, Washington, D.C. (Linda C. Kauskay, Steptoe & Johnson Chartered, Washington, D.C., James C. Roberts, Gary J. Spahn, Mays, Valentine, Davenport & Moore, Richmond, Va., on brief), for appellees.
 Before RUSSELL, WIDENER and PHILLIPS, Circuit Judges.
 DONALD RUSSELL, Circuit Judge:
 
 
 1
 This appeal arises out of a controversy between the plaintiffs Fidelity and Deposit Company of Maryland, The Home Insurance Company, and North American Reinsurance Corporation, (hereinafter referred to collectively as "Sureties") and their principal, the defendant Bristol Steel & Iron Works, Inc. (hereafter referred to as "Contractor"), arising out of a contract of indemnity executed by the Contractor in order to induce the Sureties in turn to execute a performance bond on behalf of the Contractor under a bridge construction contract with the Pennsylvania Department of Transportation (hereafter referred to as PennDOT). The subject of the action was a payment made by the Sureties to PennDOT to satisfy a claim of default asserted by PennDOT under the Contractor's performance bond. By this action the Sureties seek, under their contract of indemnity, recovery of the payments made to PennDOT, interest on such payment from date made and for attorney's fees. Federal jurisdiction rests on diversity.[1] The District Court, after a trial without a jury, sustained the Sureties' right of recovery and granted judgment accordingly. The Contractor has appealed. We affirm.
 
 
 2
 * The first ground of appeal raised by the Contractor is that this action by the Sureties under their contract of indemnity is barred by Code of Virginia Sec. 8.01-250 (1950 as Amended). This section, which has been characterized as not "a statute of limitations in the strict sense,"[2] provides:
 
 
 3
 No action to recover for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained as a result of such injury, shall be brought against any person performing or furnishing the design, planning, surveying, supervision of construction, or construction of such improvement of real property more than five years after the performance of furnishing of such services and construction.
 
 
 4
 It will be observed that the statute, by its express terms, is restricted in its application to what are in effect tort actions to recover for "injury" to property or persons and not to actions in contract. That such is the proper construction of the statute was recognized in President and Directors, etc. v. Madden, 505 F.Supp. 557, 576-77 (D.Md.1980) where the district court held that a District of Columbia statute, similar in language to Section 250, did not extend to "causes of action sounding in contract." On appeal we implicitly accepted this construction of the statute. 660 F.2d 91 at 94 (4th Cir.1981). Accordingly, since this action is not one sounding in tort but is one arising out of a specific written contract of indemnity, it is outside the scope of Section 250.[3]
 
 
 5
 The Sureties have argued that, even if they were in error in their construction of Section 250 and even if such statute were considered applicable in this case, their suit, filed four and a half years after the payment was made, would still have been timely under the statute. They reason that the limitation established by Section 250 only commences with "the final completion date of the entire project." Federal Reserve Bank of Richmond v. Wright, 392 F.Supp. 1126, 1130 (E.D.Va.1975). The construction contract involved defines the "Date of Completion of Contract," so far as this project is concerned, as follows:
 
 
 6
 Date of Completion of Contract. The date on which the Secretary, through his authorized representative, notifies the contractor of the final settlement certificate computations or revised computations, or in case any claim has been filed before the Board of Arbitration of Claims, the date on which the Board of Arbitration of Claims makes an award or dismisses the claim, shall for such purposes be the date of completion of the contract. (Paragraph 109.08(d) of the Construction Contract).
 
 
 7
 Applying the standard fixed by this definition, the Sureties urge there has been no completion of the project since there has been no acceptance certificate issued and arbitration of the claim of failure of performance by PennDOT against the Contractor has been requested and is presently proceeding, both being conditions to "completion" of the contract. The suit is, therefore, timely. While this argument of timeliness under the statute may be meritorious, we prefer to rest our disposition of this limitation issue on the purpose and scope of the statute as being restricted in application to actions for "injury" sounding in tort and not to actions in contract such as that here.
 
 II
 
 8
 Assuming that the claim of the Sureties is not barred by the limitations of Section 250, the Contractor raises a number of reasons why in its view summary judgment in favor of the Sureties was not authorized. Basically, its contentions in this regard are based on the claim that a surety is under no duty to pay an obligation of its principal when the principal's liability has not been established or admitted and that, if it makes payment prior to that determination of its principal's liability, it does so at the risk of "being able to prove the facts which might have rendered [its principal] liable ... as well as the reasonableness of the amount which it paid."[4] It asserts that the Sureties have offered no such proof and, therefore, summary judgment was improper.
 
 
 9
 There is no dispute about the normal principle that "equity generally implies a right to indemnification in favor of a surety only when the surety pays off a debt for which his principal is liable." Com'l Ins. Co. of Newark v. Pacific-Peru Const., 558 F.2d 948, 953 (9th Cir.1977). But, as the court hastened to add, "[h]owever, resort to implied indemnity principles is improper when an express indemnification contract exists;" when there is such an express contract, "a surety is entitled to stand upon the letter of his contract." Id. at 953. There is in this case an "express indemnification contract." Accordingly, the rights of the Sureties are not to be determined by general "indemnity principles," as relied on by the Contractor, but by the "letter of [the Contractor's] contract" of indemnification. Under the "letter" of this contract, the Sureties had the right to reimbursement by the Contractor for any payment made by them in good faith "under the belief ... that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed" under the performance bond executed by the Sureties on behalf of the Contractor and this right did not depend on "whether the Sureties shall have made any payment therefor."[5]
 
 
 10
 Provisions such as those just cited, while strict, are common in contracts of indemnification executed by contractors and others to induce the execution of performance bonds by compensated sureties, and they have been uniformly sustained and upheld, subject to a single exception to be noted. See, Com'l Ins. Co. of Newark v. Pacific-Peru Const., supra, 558 F.2d at 953; Transamerica Insurance Company v. Bloomfield, 401 F.2d 357, 362-63 (6th Cir.1968); Engbrock v. Federal Insurance Company, 370 F.2d 784, 786 (5th Cir.1967); American Surety Co. of New York v. Inmon, 187 F.2d 784, 786 (5th Cir.1951); United States Fidelity & Guaranty Co. v. Jones, 87 F.2d 346, 348 (5th Cir.1937); Carroll v. National Surety Co., 24 F.2d 268, 270-71 (D.C.Cir.1928); National Surety Corporation v. Peoples Milling Co., 57 F.Supp. 281, 282-83 (W.D.Ky.1944); Martin v. Lyons, 98 Idaho 102, 558 P.2d 1063, 1066 (1977); Central Surety & Insurance Corporation v. Martin, 224 S.W.2d 773, 779 (Tex.Civ.App.1949); Massachusetts Bonding & Insurance Co. v. Gautieri, 69 R.I. 70, 30 A.2d 848, 850 (1943). The only exception to this provision arises when the payment has been made "through fraud or lack of good faith" on the part of the surety but any challenge to such payment must be rested solely on that claim of bad faith or fraud. Engbrock v. Federal Insurance Company, supra, 370 F.2d at 786; Martin v. Lyons, supra, 558 P.2d at 1066. And the Contractor seemingly agrees with this view of the applicable law for it ultimately bases its substantive defense primarily on the contention that the payment by the Sureties in this case was made in bad faith or fraud.
 
 III
 
 11
 Preliminary to addressing the claim of bad faith on the part of the Sureties, a short discussion of the events preceding the payment by the Sureties in this case appears in order. After the Contractor asserts it had completed the construction contract but before PennDOT issued an acceptance certificate, certain breaks were discovered in the bridge, which was the structure covered by the contract. A thorough inspection of the bridge was then made by PennDOT and a substantial claim was made against the Contractor for alleged default in faithful performance under the contract. The Contractor responded with a denial of liability and a refusal to make repairs at its expense.[6] Demand was made by PennDOT on the Sureties. The Sureties did not, as they had a perfect right to do under their contract of indemnity (see Note 5), demand of the Contractor a payment of a reserve equal to this claim of PennDOT against the Contractor and the performance bond. On the contrary, they, relying on their principal's denial of default also denied liability. At this point, PennDOT declared the Contractor in default and later, when the Sureties continued to rely on their principal's denial of liability, declared the Sureties similarly in default. As a result of its declaration of default against the Sureties, and failure of the Sureties to accept liability under the performance bond they had executed on behalf of the Contractor, PennDOT disqualified the Sureties to act as surety on any performance bond required for work contracted by PennDOT. Such were the circumstances leading up to the agreement between PennDOT and the Sureties under which the payment, which is the basis of this action was made.
 
 
 12
 It is important to notice that, during the negotiation of the agreement, the Contractor, through its attorney, was kept in touch with the negotiations between PennDOT and the Sureties, and that after a suggested agreement had been agreed upon between them and PennDOT, such suggested agreement was submitted to the attorneys for the Contractor. That agreement carefully provided that, if the arbitration favored the Contractor, PennDOT would refund, with interest, the payment made by the Sureties with interest. Of course, if it were required in this action to reimburse the Sureties for the payment, the Contractor would be subrogated to its Surety's rights and would be entitled to receive from PennDOT the payment plus interest. Moreover, there was included in the agreement under which payment was made this sentence:
 
 
 13
 This Agreement is not intended, and shall not be used, to infringe upon or in any way affect the position or rights of Bristol (the Contractor) to pursue its rights under and with reference to the Contract.
 
 
 14
 There was never any question as between the Contractor and the Sureties with reference to the reason which prompted the Sureties to negotiate this agreement. They wanted to resume writing surety bonds in connection with road work in the State of Pennsylvania. This was fully made known to the Contractor. This was a perfectly reasonable consideration on the part of the Sureties. They had for over five years foregone making any demand on the Contractor although, from the moment PennDOT made its claim of default, the Sureties were entitled to demand and receive from the Contractor protection in connection with this claim of default.
 
 
 15
 Nor did the Contractor, with full knowledge of the payment made by the Sureties and its purpose, offer any objection to the Sureties executing this agreement for the purpose of securing the release of the Sureties from black listing by PennDOT, or to the making of the payment called for under that agreement. It never raised the contention that payment by the Sureties under the circumstances would be in fraud or bad faith, or, for that matter, even unfair to it. To the contrary, it, through its counsel, advised the Sureties that it agreed "not to raise the existence of such an agreement as a discharge or release in the event litigation is begun at a later time," and further agreed that the Sureties' action was reasonable under the circumstances, saying:
 
 
 16
 The subject agreement is being executed in order that the sureties may be permitted to again write bonds for PennDOT, which is a perfectly reasonable and laudatory objective. However, Bristol Steel is not a party to the agreement, and the agreement will have no effect whatsoever on Bristol's handling of its present claim against PennDOT, nor on any disputes between Bristol Steel and any of the other parties, nor on any other right of Bristol Steel & Iron Works, Inc.
 
 
 17
 It was only after receipt of this letter that the Sureties executed the agreement with PennDOT and made the payment which is the subject of this action.
 
 
 18
 It would seem from this recitation of the circumstances under which the payment in question was made that the Sureties acted with the utmost good faith toward their principal and sought in making their payment to protect fully the interests of the Contractor. And the Contractor apparently recognized this and this, no doubt, was the reason the Contractor did not object to the agreement. Therefore, it can be argued persuasively, though we do not ground our decision on this, that the Contractor had, by its conduct, acquiesced in the payment made by the Sureties to PennDOT in connection with "performance" under the Contractor's performance bond executed in favor of PennDOT as payment which the Contractor considered as both "reasonable" and "laudatory." However, the Contractor now takes the position--and this really is the heart of its appeal--that the payment made by the Sureties in order to secure the elimination of their disqualification as a surety on road work in Pennsylvania constituted bad faith or fraud. This contention is, as we have said, the dispositive substantive issue in this case.
 
 IV
 
 19
 It should be noted in connection with this dispositive issue that the principal under a surety contract (such as the Contractor in this case) is, under Pennsylvania law, "bound not simply to indemnify the surety but to keep it unmolested, and this before the surety has paid the principal's debt." Almi, Inc. v. Dick Corp., 31 Pa.Cmwlth. 26, 375 A.2d 1343, 1348 (1977). Certainly, this rule is broad enough to cover the situation where the surety is being "molested" by a threatened blacklist of its business, and this conclusion appears amply sustained by the authorities. Moreover, when the Sureties filed this suit to secure payment of the sum they had paid PennDOT under the contract of indemnity, they had had for some four and a half years the right under the contract to require the Contractor to reimburse them for that payment. As we have said, they had foregone such right and only exercised it when the time was approaching when their right of reimbursement would be lost by the state statute of limitations, if they failed to act. Moreover, it seems settled that even without an express provision in the contract of indemnity to make the payment in issue with right of reimbursement by the Contractor, the Sureties would under the authorities have been authorized to make the payment they did and there would have been no justification for a finding of bad faith or fraud simply because they made the payment to secure their removal from PennDOT's blacklist as a surety on road work in Pennsylvania. This conclusion is implicit in the decision in U.S. Fidelity Co. v. Sandoval, 223 U.S. 227, 32 S.Ct. 298, 56 L.Ed. 415 (1912).
 
 
 20
 In Sandoval, the surety had executed an appeal bond in connection with a judgment by a territorial trial court. The Supreme Court of the Territory affirmed the judgment. The Governor of the Territory demanded payment of the bond despite the fact that the judgment had been stayed pending appeal of such judgment to the United States Supreme Court. The Governor backed up his demand for immediate payment by threatening the surety with forfeiture of the right to transact business as a surety in the Territory, which was substantially what PennDOT had done with reference to the Sureties' right to do business as a surety on road work in Pennsylvania. The Supreme Court sustained the surety's right to reimbursement by his principal under these circumstances, finding its payment made in good faith:
 
 
 21
 The Supreme Court of the Territory, as we have seen, made this bond and security the controlling factor in its decision. The court held that the payment of the judgment was not premature--in other words, not voluntary. In this we agree with the court. Appellant was not bound to await the issuance of an execution. The affirmance of the judgment fixed its liability. Babbitt v. Finn, 101 U.S. 7, 15 [25 L.Ed. 820]. And in determining the character of the payment as voluntary or negligent, as alleged by appellees in their answer, the threat of the Governor must be given account, even if it be granted that he had no power, as held by the Supreme Court of the Territory in this case, to revoke the license of appellant to do business in the Territory. Such ruling had not then been made, and an attempted exercise of such power would have been injurious to appellant to yield to or resist. Appellant certainly acted in good faith, and discharged the duty that it was assured it had assumed under the law. However, this may not be of consequence, and we pass to the consideration of the ground upon which the Supreme Court of the Territory based its decision. The court held, as we have seen, that appellant was justified in paying the judgment, and, having paid the judgment, it was entitled to reimbursement, but to no more, the court said, than reimbursement, and held that the only outlay it had incurred was for certain expenses, and limited the judgment to their amount. 223 U.S. at 232, 32 S.Ct. at 300.
 
 
 22
 See to the same effect, Com'l Ins. Co. of Newark v. Pacific-Peru Const., supra, 558 F.2d at 953 and Carroll v. National Surety Co., supra, 24 F.2d at 270-71.
 
 
 23
 Under the authority of Sandoval, we have no hesitancy in finding, as did the Contractor's counsel, that the action of the Sureties in making this payment was "reasonable" and was, as a matter of law tainted with neither bad faith nor fraud. It accordingly follows that the Sureties are entitled to reimbursement by the Contractor.
 
 V
 
 24
 There remains for decision the Sureties' right to attorney's fees and prejudgment interest. The recoverability of these items is clearly authorized under the contract of indemnity.[7] So far as attorney's fees are concerned, the contract expressly provided for reimbursement by the Contractor for any counsel fees incurred "[b]y reason of the failure of the Contractor or Indemnitors to perform or comply with the covenants and conditions of this Agreement or ... in enforcing any of the covenants and conditions of this Agreement." The Contract of Indemnity is equally clear on the right of the Sureties to interest on any payment made by them under the performance bond. As we have seen, the right of the Sureties to make the payment to PennDOT, which is involved here, is justified under the contract of indemnity and as such it carries the right to interest under the specific language of the contract.
 
 
 25
 The judgment of the District Court in favor of the Sureties is accordingly
 
 
 26
 AFFIRMED.
 
 
 
 [1]
 The parties appear to agree that the law of the forum (Virginia) controls on the issue of the statute of limitations. See, Wright, Law of Federal Courts, 379 (4th ed., 1983)
 
 
 [2]
 Federal Reserve Bank of Richmond v. Wright, 392 F.Supp. 1126, 1129 (E.D.Va.1975)
 
 
 [3]
 "Indemnity," as used in the statute, is used in the disjunctive with the term "contribution" and plainly is intended to cover contribution among joint tortfeasors in connection with a tort claim for injury to person or property. The term has no application to a suit for breach of a formal contract of indemnity such as we have here
 
 
 [4]
 In large part, the Contractor relies on Sun Oil Company v. Renshaw Well Service, 571 S.W.2d 64 (Tex.Civ.App.1978), in support of this position
 
 
 [5]
 The language of this section is as follows:
 Payment ... shall be made to the Surety by the Contractor and Indemnitors as soon as liability exists or, is asserted against the Surety, whether or not the Surety shall have made any payment therefor. Such amount shall be equal to the amount of the reserve set by the Surety....
 In the event of any payment by the Surety, the Contractor and Indemnitors further agree that in any accounting between the Surety and the Contractor, or between the Surety and the Indemnitors, or either or both of them, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; ....
 
 
 [6]
 The Contractor and PennDot thereafter entered into binding arbitration on the Contractor's responsibility under its contract and this arbitration has been in progress for almost five years
 
 
 [7]
 The Contractor does not contest the reasonableness of the charge for attorney's fees, only the right to attorney's fees